UNITED STATES of America

v.

Donnie FREE, Appellant.

No. 23221.

United States Court of Appeals,
District of Columbia Circuit.

Argued May 18, 1970.

Decided Aug. 12, 1970.

**632**

Mr. Julian P. Freret, Washington, D. C. (appointed by this Court) for appellant.

Mr. Stephen M. Schuster, Jr., Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry, Asst. U. S. Atty., and Albert W. Overby, Jr., Asst. U. S. Atty. at the time the brief was filed, were on the brief, for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL and ROBINSON, Circuit Judges.

LEVENTHAL, Circuit Judge:

Appellant was convicted of assault with a dangerous weapon (22 D.C.Code § 502) and carrying a dangerous weapon (22 D.C.Code § 3204). The principal issue presented by this appeal is whether the gun, identified by the victim as the weapon with which appellant assaulted her, and admitted in evidence without objection, was seized by the police in violation of appellant's Fourth Amendment rights. We hold that it was not, and we affirm the conviction.

The facts were related by Wanda Venson, the victim, as follows: On December 18, 1968, appellant approached her while she was sitting with a friend, Mary Stroman, at the Wiggins Restaurant on Benning Road. He asked Miss Venson if she knew him; when she answered that she did not, he "smacked [her] in the face." As she attempted to leave, appellant pulled a silver-plated gun and pointed at her chest. Appellant told her that if she moved he would take her into the alley and do something to her. Miss Venson sat still whereupon appellant walked away.

Mary Stroman corroborated Miss Venson's account of the assault with a silver-plated pistol. She stated that although she had seen the pistol, she did not get a good look at the assailant's face.

Appellant testified and admitted he had been in the Wiggins Restaurant on the day in question and spoken with Wanda Venson, but denied having threatened her or having a gun in his possession.

The circumstances surrounding the recovery of the weapon were developed by the testimony of Officer Clark. Approximately fifteen minutes after the

assault the police arrived at the Wiggins Restaurant in response to a call from Miss Venson. Officer Clark and his partner picked up Mary Stroman at her school, where she had reported the incident to her principal, and proceeded to the restaurant. There they were given the license number of the automobile in which appellant and a companion had driven away. They ascertained the name and address of the registered owner and drove the two ladies to this address. When they failed to find the car there, they decided to drive around the area in the hope that the ladies would be able to spot the car. Shortly Miss Venson did spot the car, and the police brought it to a stop. By this time approximately forty-five minutes had elapsed since the assault.

Officer Clark and his partner removed appellant, who was driving, and his companion from the car and searched them for weapons without success. Officer Clark's partner then began to search the automobile. While "fish[ing] under the front seat" he discovered the weapon. During this search appellant and his companion were guarded by Officer Clark at a distance of approximately fifteen feet from the car.

## I. VALIDITY OF SEARCH OF AUTO

*Contention that Search Was Valid As Incident to Arrest*

The Government asks us to sustain this search on the doctrine of search incident to arrest, an approach which requires us to consider the application of Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) to a search of an automobile made shortly after the police had brought it to a stop and arrested its driver.

■ That contention would be unavailable if the search were not made at the scene of the arrest. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). Here the search was made at the scene of arrest, and so we consider the contention.

In *Chimel* the Court made express its desire to move against particular shortcomings in the doctrine of search incident to arrest advanced in such cases as Harris v. United States, 331 U.S. 145, 67 S.Ct. 1098, 91 L.Ed. 1399 (1947) and United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950). *Harris* and *Rabinowitz* had significantly eroded the protection intended by the Fourth Amendment in that the mere fact of arrests made with probable cause led to the conduct, as a matter of routine, of accompanying searches that were not justified by probable cause, and were indeed searches that bordered on "what might be done under a general warrant"—that abusive carte blanche to law enforcement officials against which, more than anything else, the Fourth Amendment was directed.

■ *Chimel* corrected these evils in two ways. First, it gave new life to a line of cases which hold that the doctrine of search incident to arrest is confined by the "cardinal rule" that a search warrant must be obtained whenever reasonably practicable; that the warrant requirement is not lightly to be dispensed with but rather the burden is on the Government to show the need for an exemption. Go-Bart Importing Co. v. United States, 282 U.S. 344, 51 S.Ct. 153, 75 L.Ed. 374 (1931); United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932); Trupiano v. United States, 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948); United States v. Jeffers, 342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951). Second, *Chimel* limits the doctrine of search permissible without a warrant even in a home, because made incident to arrest, to "a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from which he might gain possession of a weapon or destructible evidence." 395 U.S. at 763, 89 S.Ct. at 2040. To the extent that *Harris* and *Rabinowitz* are inconsistent with either of these principles, they have been expressly overruled.

This is not a case where the search is in any sense comparable to what might have been done under the outlawed general warrant. The search was limited in scope to a search of the automobile in which appellant was arrested.

■ The police had strong probable cause at the time of the search to believe that appellant had committed an assault with a dangerous weapon and that the weapon, the instrumentality of the crime, would be found in the automobile. They had not only the identification of the complaining witness but also the fact that appellant was arrested, only forty-five minutes after the offense, in a car reliably identified as the car used by the suspect to leave the scene of the offense. When the search of appellant and his companion failed to produce the weapon, the police had ample ground for concluding that the weapon was likely secreted somewhere in the automobile.

The facts just discussed certainly present the possibility that the situation before us falls within the category of protective searches of the arrestee's person and area within his immediate control which under *Chimel* may be routinely searched without a warrant. The record before us, however, does not provide an adequate basis to rule on this point. There was no objection at trial to the admission of the gun. We know only that appellant and his companion were being guarded some fifteen feet from the car while it was searched. It may be that the police could justify this as a protective search made in order to negative a reasonable fear of a break for the car and the use of a weapon located therein. If it were necessary to decide whether this is a search made justifiable in the absence of a warrant because made incident to arrest, a remand would

be required for further proceedings and findings.

There is a difference of opinion as to whether and to what extent *Chimel* is retroactive. We need not pursue that question because we affirm the judgment on other grounds, which will now be discussed.

*Ruling Applying Special Doctrine Permitting Warrantless Search of Automobile Based on Probable Cause, Without Regard to Possibility of Immobilization Pending Application for Warrant*

The record as it stands, without remand, provides an alternate justification for failure to obtain a warrant in this case. The Supreme Court's recent decision in *Chambers* upheld a warrantless search of an automobile in a situation where the police had probable cause to search an automobile, but the circumstances which furnished this probable cause were unforeseeable prior to the time that the opportunity to search arose. "Where this is true," the Court said, "if an effective search is to be made at any time, either the search must be made immediately without a warrant or the car itself must be seized and held without a warrant for whatever period is necessary to obtain a warrant for the search." The Court concluded that in this circumstance the Constitution does not require the police to immobilize an automobile and obtain a warrant but may proceed to conduct a warrantless search.

■ Clearly the case at bar falls within the exception to the warrant requirement articulated in *Chambers*.[1] Probable cause for the search did not arise until the police discovered appellant driving the get-away car only forty-five minutes after the assault. Thus this is not a case where prior to the

1. We do not agree with appellant that the justification for this warrantless search is undercut because neither appellant nor his companion were the owner of the automobile. The owner's Fourth Amendment rights were not violated when the police, with the justification set out above, made a warrantless search of those portions of the car to which the owner had delivered access and control to others. Had the owner retained the key to a locked trunk or glove compartment when he lent his car, an issue of reasonableness, as well as one of probable cause, might well arise.

search the police had both the information on which a warrant could have been issued and the time to obtain that warrant. As in *Chambers* the only way in which a warrant could have been obtained was by temporarily seizing the automobile and immobilizing it.

The reasonableness of a wide exemption from the general warrant requirement in the case of automobile searches supported by probable cause is underscored by two significant considerations: First, the public interest would be disserved by both the substantial burden and the diversion of scarce police resources that would be involved in any requirement for immobilizing a car pending application for a warrant. Second, the privacy expectation which the warrant procedure is designed to safeguard does not attach to the automobile in the same way or to the degree as it attaches to the home.

The Fourth Amendment provides that the people shall be secure in their persons, houses, papers and effects against unreasonable searches and seizures. The home is a place of repose from the outside world, including the world of government officials.[2] Under conditions of modern life a comparable, if not an identical, expectation of privacy attaches to one's office, hotel room, and telephone. But an automobile—at least ordinarily, and putting aside special cases that may be imagined, like a mobile home—is essentially a means of transport on the public way, and one that in large part exposes the vehicle and its contents to view.

While search or seizure of an automobile, with other effects, is prohibited by the Fourth Amendment unless reasonable,[3] the determination of the kind of showing or burden that may be rigorously prescribed as a condition of official entry, necessarily takes into account the lesser significance and expectation of privacy that ordinarily characterizes the automobile.[4]

It merits mention that neither our opinion nor *Chambers* considers the issue of probable cause for search that is foreseeable in advance. If the police obtain an arrest warrant for a suspect they have reason to believe will be found in a home or car where material evidence is likely to be located, their ability to conduct a search beyond the narrow limits of *Chimel* may require their application for authority to search as well as arrest.[5]

## II. QUESTIONS AS TO LOCATION OF PERSONS REFERRED TO BY DEFENDANT

Appellant contends it was error to overrule the objection made when the prosecutor asked him whether two people he had named in his testimony were present in the courtroom, and if not, where they were.

The jury may not be invited to infer that the testimony of an absent witness would have been adverse to a party unless it has first been determined

---

2. Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1965); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); Dorman v. United States, 140 U.S.App.D.C. ——, 435 F.2d 385 (April 15, 1970, en banc).

3. Preston v. United States, 376 U.S. 364, 367, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964).

4. Thus it is that in the case of an automobile the authority of the police to seize or immobilize ordinarily establishes an authority to search without a warrant, as held in *Chambers*. The same syllogism may not be applicable where the item that may be seized has a higher standing in terms of privacy, *e. g.* the mobile home, or there is relatively little burden in maintaining the seizure while obtaining a warrant. It may reasonably be doubted whether, for example, *Chambers* was intended to or does operate to confer authority on the police to open, say, brief cases found in the trunk of a car searched for evidence without a warrant.

5. *See* Dorman v. United States, *supra* (140 U.S.App.D.C. p. ——, 435 F.2d p. 394). We see no reason why a form of combined warrant may not be used.

**636**

that the witness is peculiarly within the power of that party to produce and that the witness's testimony is likely to elucidate the transaction in issue. *See* Wynn v. United States, 130 U.S.App.D.C. 60, 397 F.2d 621 (1967) and cases there cited.

 However, when a witness is available to both parties, "the failure to produce is *open* to an inference *against both parties*, the particular strength of the inference against either depending on the circumstances." 2 Wigmore, Evidence § 288. This formulation has been cited with approval by eminent judges.[6] The question put by the prosecutor to defendant was, therefore, not inherently objectionable.

 But such a question may not be put in an unfair way, or pushed to the point of over-reaching. For example, the prosecutor must avoid any implication that no such person exists, at least where he has been given reasonable advance notice of that person's identity. And repeated questioning as to persons who figure so little that their absence is not significant may cumulate to the point of distortion. The trial judge has discretion to prohibit or limit such questions to avoid abuse. In the case at bar we do not think the prosecutor exceeded the bounds of fair probing into the circumstances surrounding the absence of witnesses to a prejudicial degree. His questions and the defendant's answers reveal only a very brief foray into this area. As to one person, the defendant answered that he was not present because he was in the service; this explanation probably inured to the defendant's benefit. We are troubled because neither of the persons about whom questions were asked played any large part in the case, but we see no reasonable possibility that these questions contributed to the conviction. Harrington v. California, 395 U.S. 250, 254, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

Affirmed.

6. United States v. Llamas, 280 F.2d 392 (2d Cir. 1960) (Clark, J.) ; United States v. Jackson, 257 F.2d 41 (3d Cir.1958)

BAZELON, Chief Judge:

I concur in the judgment of the court solely on the authority of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (June 22, 1970).

(Goodrich, J.) ; United States v. Beekman, 155 F.2d 580 (2d Cir. 1946) (Frank, J.).