UNITED STATES of America
v.
Clifford H. COLLINS, Appellant.
No. 22770.

United States Court of Appeals,
District of Columbia Circuit.

Argued Dec. 10, 1969.
Decided Jan. 20, 1971.

---

Fahy, Senior Circuit Judge, filed a concurring opinion and Robb, Circuit Judge, filed a dissenting opinion.

Mr. Richard G. Kline, Washington, D. C., with whom Mr. Alan S. Cooper, Washington, D. C. (both appointed by this Court) was on the brief, for appellant.

Mr. Robert C. Crimmins, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., were on the brief, for appellee. Mr. David G. Bress, U. S.

Atty. at the time the record was filed, also entered an appearance for appellee.

Before FAHY, Senior Circuit Judge, and ROBINSON and ROBB, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

This appeal follows a conviction in a prosecution for violation of federal narcotic laws [1] stemming from appellant's possession of heroin. Appellant contests the constitutionality of the statutory provisions under which he was prosecuted,[2] an insanity instruction given by the trial judge,[3] and the admission of evidence of his possession of the heroin which underpins the conviction. Because a majority of the court agrees, though not for identical reasons, that the evidence should have been suppressed, the judgment of conviction is reversed on that account. In this opinion, I undertake to elucidate the views that persuade me to that conclusion.[4] Judge Fahy concurs therein, and Judge Robb dissents therefrom, for the reasons respectively set forth in their separate opinions.

I

An understanding of the Fourth Amendment issue in this case requires a rather detailed recital of the facts. On October 6, 1967, an employee of the Chesapeake & Potomac Telephone Company was robbed of a coin box and its contents by a lone gunman. The

---

1. 21 U.S.C. § 174 (1964), 26 U.S.C. § 4704(a) (1964).

2. This challenge is defeated by Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), and Burgess v. United States, 142 U.S.App.D.C. ——, 440 F.2d 226 (Dec. 29, 1970). We deferred our decision in the instant case to await the action in those cases.

3. The judge gave a charge essentially like the one approved in Bolton v. Harris, 130 U.S.App.D.C. 1, 395 F.2d 642 (1968), but went one step further in his elucidation of the consequence of an insanity acquittal. He informed the jury of the result that would be occasioned by a post-trial sanity hearing finding that appellant

is mentally sound. He did not, however, comment on the point in time at which appellant could possibly have been released. See Lyles v. United States, 103 U.S.App.D.C. 22, 254 F.2d 725 (1957), cert. denied, 356 U.S. 961, 78 S.Ct. 997, 2 L.Ed.2d 1067 (1958).

4. The court's disposition renders it unnecessary to reach the question of propriety of the insanity instruction, see note 3, *supra.* Nor is there any occasion to discuss what, if any, applicability our recent decision in Watson v. United States, 141 U.S.App.D.C. ——, 439 F.2d 442 (July 15, 1970) (*en banc*) has to this case.

employee furnished the police with a description of his assailant, including the fact that the robber had a scar on his neck, and the color, make, license number,[5] and approximate vintage of the automobile in which he escaped.

On the morning of October 12, 1967, a telephone company investigator informed the police that the car could be found on the 1900 block of Fourteenth Street in Northwest Washington. Two detectives, in plain clothes, went to the block, and staked out the vehicle. Neither search nor arrest warrants were secured. After a fifteen to twenty minute wait, the officers observed three persons —two men and a woman[6]—enter the car. The two officers approached the car, one to a side; the car had not yet been started, and was blocked in front by a truck. As Detective Noone approached, he saw appellant attempt to conceal a small brown object on the floor of the car. At that time the officer had

no idea as to what the object was. It later turned out to be a small change purse.[7]

The exact sequence of the events which followed is the subject of conflicting testimony. At the preliminary hearing,[8] Detective Noone testified that he went to the right rear car door, opened it, placed appellant under arrest for robbery, and ordered him out of the car. Then, said the officer, he picked up the brown change purse before appellant could hide it under his foot, opened it, and placed appellant under arrest for narcotics violations. This is apparently the version of events upon which the trial judge acted[9] in refusing to suppress, and it is supported by testimony at the suppression hearing.

■ At the trial, both counsel for the Government and for appellant—and the detective—were careful to avoid mentioning the robbery in any way. As the trial judge noted,[10] the sequence of

5. A check of police records revealed that the license plates had been stolen from another car and attached to the getaway vehicle.

6. The woman had boarded the automobile and taken the right front passenger seat. She was neither arrested at the scene nor later charged with any offense, but was allowed to leave the car and the area immediately.

7. Appellant's version of the events, gleaned from his testimony at the suppression hearing, was the following: warned by the driver that the police were approaching, appellant put a bottle of wine in a brown paper bag on the floor of the car; he then got out of the car as ordered, was told he was under arrest for robbery, and was searched and taken to a precinct station. He claimed that the first time he saw the change purse was at the station, and that it did not belong to him. A brown bag containing a bottle of wine was found in the car. Appellant did not testify at trial.

8. The procedural history of this case is rather unusual. First, a preliminary hearing was held before a United States Magistrate as to both appellant and the person charged with the robbery. A motion to suppress by the robbery suspect was then heard; some facts relevant to this case were apparently brought out,

but the transcript of that hearing is not part of the record on this appeal. See note 11, *infra*. Appellant's pretrial motion to suppress was then denied by one judge. Another judge presided over the trial; he reopened the motion to suppress and held a second hearing, but postponed decision until the trial. Transcripts of the prior hearings were given to the trial judge without objection by appellant. The trial followed, and at the close of the Government's case the motion was renewed; before the jury returned its verdict, the motion was for the last time denied.

9. The trial judge ruled from the bench that "[t]he officer opened the door, ordered the defendant out, and placed him under arrest, and picked up the purse. After a glance at the contents, the defendant was later charged with a narcotics violation." The judge found the arrest of appellant for robbery illegal, but then, ruling that narcotics had not been found on his person, held that the search was justified as one of the car which has been used in the robbery. The judge stated that appellant's furtive action lent support to the officer's actions.

10. The judge made the following statements, in the absence of the jury, during a discussion of the suppression motion at trial: "I took his [Detective Noone's]

events seems quite different if only the trial transcript is read. The detective there stated that he opened the car door, grabbed the change purse, which was partially hidden by appellant's foot, opened it, and then placed appellant under arrest for narcotics violations. Both appellant and the Government press this version as the operative set of facts. I need not stop to determine which set of facts to analyze,[11] however, since under either set I think the search was unlawful.

## II

The first theory on which the search could be justified is that appellant was properly arrested for robbery, and that the search was incidental to that arrest.[12] It matters not, in my view, whether the search preceded or followed the moment of arrest if the officer possessed at the time sufficient information to render the arrest lawful.[13] The crucial question is not one of timing, but rather whether adequate reason existed for the arrest.[14]

Like the trial judge, I cannot believe that the officer could possibly have had a reasoned belief, measuring up to the probable cause standard, that appellant was the robber who made off with the telephone coin box and its contents. The victim not only described the getaway vehicle with accuracy but described his assailant as well. That description was

testimony with considerable surprise, because it is quite different than I had understood what the case was about. * * * He [Detective Noone] said he did not put him [appellant] under arrest until after he reached the car, picked up the purse and he examined the contents, determined it was narcotics—probably narcotics, and then he put him under, and he did not put him under while he was sitting in the car. * * * The Court had been proceeding in the consideration of this motion on the assumption that he was arrested for robbery, that that arrest, I have in mind, may be a proper arrest. * * * That arrest then for robbery, I thought was the arrest that I was dealing with. * * * Now I have a real probable cause question. What could be the probable cause in this arrest? * * * "

11. Appellant contends that the Government has impermissably supplemented the record on appeal with collateral testimony that was not presented to the jury. It is true that the Government's brief refers to the suppression hearing that was held prior to the trial of the alleged robber, but that transcript is not part of the record in this court and I have not considered it. Furthermore, the Government's references added nothing to the evidence that had been developed in the other hearings. As to the other transcripts that are before us and were before the trial judge, see note 8, *supra*, appellant's argument misconceives the evidentiary predicate upon which a motion to suppress is based. The jury has no role to play in the determination of the admissibility of the challenged evidence;

whether a particular set of facts gives rise to a probable cause basis for the belief that a suspect has performed criminal acts is a question of law to be determined by the court outside the presence of the jury. *E. g.*, Simmons v. United States, 92 U.S.App.D.C. 122, 124, 206 F.2d 427, 429 (1953). Appellant was represented by counsel at all hearings the transcripts of which are before this court, and were before the trial judge.

12. The Government has not argued that appellant was properly arrested for a narcotics violation before the change purse was opened. Nor do we think that such a contention has any support whatsoever in the circumstances. The officer testified that he did not know what was in the purse until he opened it and he did not know appellant; he simply saw him try to hide a brown object while sitting in a car that had been used in a robbery some six days before.

13. Bailey v. United States, 128 U.S.App. D.C. 354, 357, 389 F.2d 305, 308 (1967) ; Armada v. United States, 319 F.2d 793, 796 (5th Cir. 1963), cert. denied, 376 U.S. 906, 84 S.Ct. 659, 11 L.Ed.2d 605 (1964) ; United States v. Lucas, 360 F. 2d 937, 938 (6th Cir.), cert. denied, 385 U.S. 875, 87 S.Ct. 152, 17 L.Ed.2d 102 (1966) ; Fernandez v. United States, 321 F.2d 283, 286–287 (9th Cir. 1963).

14. See Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964) ; Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) ; Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

fairly comprehensive: it outlined the robber's height, weight, complexion and a distinctive neck scar which could have been visible through the sport shirt appellant was wearing when apprehended. While the police officers testified that they had observed appellant and his companions board the car, the record is barren on their observations prior to the actual act of entry. I am hesitant to assume that while the officers had the suspected vehicle under surveillance, their attention was diverted as the parties approached and only refocused as they got into the vehicle.[15]

There is no question but that the officers who staked out the getaway car had ample grounds to believe that that car was the one used by the robber. Consequently the police properly assumed that the robber might return to the vehicle and offer an opportunity for arrest. But this does not mean that everyone returning to the vehicle could reasonably be arrested for robbery. The record is not in dispute as to the number and description of the persons who returned to the car. One of the trio was female, and therefore hardly suspect as the *lone gunman*. Of the two males, the person in the driver's seat met the description given to the police. Appellant did not match that description and there was no independent information connecting appellant with the holdup.

■ I conclude, in these circumstances, that the trial judge was correct in holding that the arrest of appellant for

robbery was illegal. On its facts, this case is remarkably similar to United States v. Di Re,[16] where the Supreme Court held that the police lacked probable cause for an arrest. As the Court said there, appellant's mere presence in the getaway car did not cost him "immunit[y] from [a] search of his person to which he would otherwise be entitled."[17] No search of appellant incidental to the arrest could then be lawful.[18]

### III

■ In support of the refusal to suppress, the Government argues that because there unequivocally existed a reasonable basis for a belief that the observed car had been used in the holdup, the vehicle could justifiably be searched for fruits or instrumentalities of the crime. By this approach, the illegality of the arrest for robbery, if one took place, is irrelevant. It was apparently upon this theory that the trial court sustained the search.

I begin by noting disagreement with the characterization of the search as one of the vehicle instead of the person of the appellant. The officer observed appellant's efforts to conceal the brownish object as he approached the car. When the officer opened the door, the purse was partially concealed by appellant's foot. To recover the purse, the officer had first to move appellant's foot. Wresting the purse from appellant's physical control in this way is more accurately described as a search of the person than of the automobile.[19]

15. I note that the driver of the car was clad in a black tee shirt of the same general type as the one described by the victim of the robbery. Upon closer examination, the officer accompanying Detective Noone saw that the driver of the car had the distinctive scar described by the telephone company employee as marking his assailant. When the other characteristics related to the police by the victim are taken into consideration, one is forced to conclude that had the two suspects' approach to the vehicle been observed, only the other male, and not appellant, could reasonably have been presumed to be the robber.

16. 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948).

17. *Id.* at 587, 68 S.Ct. at 225.

18. Byars v. United States, 273 U.S. 28, 29, 47 S.Ct. 248, 71 L.Ed. 520 (1927); Glisson v. United States, 406 F.2d 423 (5th Cir. 1969).

19. Certainly if the change purse had physically been on the person of appellant, the search could not have been lawful. That much was plainly held in United States v. Di Re, *supra* note 16. There the police, without a warrant, searched the person of a passenger in a car which another, properly arrested, had been driv-

Even assuming *arguendo* that the search was properly one of the car used in the holdup, I believe the evidence should have been suppressed. The Supreme Court recently spoke to this problem in Chambers v. Maroney.[20] There the police, without a warrant, searched a car which had been identified as having been used in a robbery. The Court upheld the "warrantless search of an automobile in a situation [because] the police had probable cause to search an automobile, but the circumstances which furnished this probable cause were unforeseeable prior to the time that the opportunity to search arose." [21]

This case does not fall within the principle laid down in *Chambers*. In the first place, it is by no means certain that the police had probable cause to search the car, even though it had been used in the robbery. The theft took place on October 6; the confrontation between appellant, sitting in the rear seat of the vehicle, and the police took place six days later. A time lapse of so many days dissipates the reasonableness of the expectation that the fruits or instrumentalities of the crime would be in the car, particularly since the original taking had involved just a coin box and a large amount of small change. In *Chambers*, on the other hand, the robbers of a service station had displayed a gun, had taken bills from the cash register, and had directed that coins be put in the attendant's right hand glove; and there the getaway car was stopped "[w]ithin an hour" of the robbery. United States v. Free,[22] decided by this court soon after

*Chambers*, is likewise far different from the instant case. There an accused assaulter's car was identified by the complainant and the accused was arrested within 45 minutes of the crime. The police knew that the assaulter had brandished a gun, and they searched the car for it.

Even were we to assume that the police had probable cause for searching the car, there is no explanation in the record as to why a search warrant was not obtained. The Court in *Chambers* was careful to point out that "[o]nly in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search." [23] In that case, the police spotted the car following a radio broadcast of its description. In *Free*, the police were cruising the area around the house of the registered owned of the car shortly after the assault. Here, on the other hand, the police were informed in the morning where the car could be found; they went there, waited a short time and then arrested the accused robber and appellant. It may be that there was insufficient time to obtain a warrant in the instant case, but that certainly is not plain from the record.

■ Moreover, assuming even that there was probable cause to search the car and that a warrant could not have been obtained, no reason justifying an opening of the change purse appears. The Government asserts that the officer was reasonable in thinking that appellant was secreting some fruit or instrumen-

---

ing. Assuming that the police were justified in a warrantless search of the car, said the Court, they had no reason stemming from that justification to search the person of the passenger. *Id.* at 586–587, 68 S.Ct. 222. See also United States ex rel. McArthur v. Rundle, 402 F.2d 701 (1968), where the Third Circuit, faced with facts similar to those we face, treated the situation as a search of the person, not of the vehicle. There the police saw the accused push an envelope under his seat; the envelope was open when seized and the officer saw what later turned out to be incriminating evi-

dence inside. The search was held unlawful. The Government evidently made no attempt to justify the search as one of the car.

20. 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 2d 419 (1970).

21. United States v. Free, 141 U.S.App. D.C. —— at —— ——, 437 F.2d 631 at 634–635 (Aug. 12, 1970), *explaining* Chambers v. Maroney, *supra* note 20.

22. *Supra* note 21.

23. 399 U.S. at 51, 90 S.Ct. at 1981.

tality of the robbery. But the change purse is only about hand-size, so the officer could not have been expected to find the coin box inside it. Nor could he reasonably have expected to find fruits of the crime; at best he might have stumbled upon dimes and nickels, but the number of them that might be held in a change purse would hardly be indicative of a robbery of a coin box of some $200 in coins. This is very different from the search of the glove in *Chambers*; there the police had been told that the glove, which belonged to the service station attendant, had been filled with coins less than an hour before. Nor is there the slightest indication in the testimony that here the officer thought he had found the gun that the robber allegedly used; and there is no evidence that the officer seized and opened the purse for his own protection.[24]

### IV

■ Although not urged to do so by the Government, and although "[a] lack of probable cause cannot be made up in hindsight by a hypothetical variation in the basis on which a search was conducted," [25] I have nonetheless explored another possible justification for the search. Appellant was in a car which had been used in a robbery, and he was in the company of one who was to be lawfully arrested. Although these circumstances do not generate probable cause to arrest,[26] the police officers of course had the power to protect themselves and others from harm. Furthermore, it appears that they may also have had the power under Terry v. Ohio [27] to "stop"

appellant for investigatory purposes.[28] If they could "stop" appellant, they could also, if they had reason to believe that he may have been armed and dangerous, "frisk" him.[29]

■ But I believe that even this theory cannot support this search. Assuming, without deciding, that appellant's presence in the car was reason to stop him, there is not the slightest indication from the testimony that the officer thought appellant dangerous or armed, that is, the officer never even hinted that his own safety or that of others motivated him in reaching for and opening the change purse. And since there is no evident ground to suppose dangerousness —all the officer knew was that appellant was in a car that had been used in a robbery and that he was trying to hide something—the search here does not seem to fall within the *Terry* rule.

This case, moreover, seems almost on all fours with Sibron v. New York,[30] a companion to *Terry*. In *Sibron*, there was no preliminary frisk; rather, the officer, assumed to have reason to stop Sibron, reached immediately into his pocket and discovered narcotics. Since the justification for the search was the officer's safety, it was clear that he had exceeded all the reasonable boundaries of a protective search. Similarly in the instant case, the officer reached immediately into the car, moved appellant's foot, and seized and opened the change purse. This seems just about the same as the officer's reaching into Sibron's pocket as soon as he was stopped.[31] In fact, in the present case

24. *Cf.* United States v. Free, *supra* note 21. See Part IV, *infra*.

25. United States v. Cunningham, 138 U.S. App.D.C. 29, 30, 424 F.2d 942, 943 (1970).

26. *E. g.*, United States v. Di Re, *supra* note 16; People v. Henneman, 373 Ill. 603, 27 N.E.2d 448 (1940).

27. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

28. See W. R. LaFave, "Street Encounters" and the Constitution: Terry, Sibron, Peters and Beyond, 67 Mich.L.Rev. 40, 83 (1968).

29. Terry v. Ohio, *supra* note 27, 392 U.S. at 24, 88 S.Ct. 1868.

30. 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed. 2d 917 (1968).

31. In fact, there seems to have been slightly more reason for the search in *Sibron*, for the officer asserted that Sibron put

an alternative was open to the officer that was not present in *Sibron*: the officer, if he feared that something in the purse might have been used against him, could simply have put it out of reach until his investigation was completed.[32] On the facts here there was no reason for him to open it.

In sum, there is no theory on which the search in this case can be sustained. The result is that the evidence uncovered by the search was wrongly admitted. Appellant's conviction must accordingly be reversed and the case remanded to the District Court for a new trial.

So ordered.

FAHY, Senior Circuit Judge (concurring):

I agree with Judge Robinson that the questioned evidence should have been suppressed and the conviction for that reason reversed without reaching appellant's other contentions.

■ My reason for concluding that the evidence should have been suppressed is that in my opinion the arrest of appellant for robbery was unlawful, as the trial judge found, and the seizure of the purse was incidental to that arrest and therefore the contents of the purse were inadmissible in evidence as the fruit of an unlawful arrest. When the purse was found to contain narcotics and appellant was then arrested again, this time for narcotics violations, the unlawfulness of the seizure was not remedied.

I do not find it necessary to go beyond the foregoing.

ROBB, Circuit Judge (dissenting):

I think the search and seizure were valid on the authority of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

As the majority concedes the police had ample grounds to believe that the automobile in which the appellant was sitting was the one used in the robbery. It matched the description of the getaway car and bore the same stolen license plates. Furthermore, there was probable cause to arrest the driver, whose description tallied in detail with that of the robber. In these circumstances I think the officers had a right to search the car pursuant to the arrest of the driver, and without regard to the arrest of the appellant; and in the course of this search they had a right to seize and examine the coin purse, which was on the floor of the car.

In my judgment it is immaterial that the purse was partially concealed by the appellant's foot. The purse was on the floor of the car, not on the appellant's person; indeed he had deliberately and furtively removed it from his person.

It is conceded also that the purse might have contained a number of dimes and nickels—at least a part of the proceeds of the robbery. Again, it might have contained ammunition for the pistol used in the robbery. The police were therefore justified in opening the purse.

With all respect, it seems to me that to extend the protection of the Fourth Amendment by requiring a search warrant to open a coin purse, found on the floor of a getaway car in the circumstances of this case, is to stretch the Amendment beyond reasonable limits.

I would affirm the conviction.

---

his hand in his pocket when the inquiry began. The officer did not claim, however, that he anticipated harm from Sibron.

32. See LaFave, *supra* note 28, at 90.