**Maurice E. DENT, Jr., Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 13798.**

District of Columbia Court of Appeals.

Argued April 11, 1979.

Decided July 16, 1979.

Daniel Burke, Washington, D. C., for appellant.

F. Joseph Warin, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, Peter E. George, and Larry G. Whitney, Asst. U. S. Attys., Washington, D. C., were on brief, for appellee.

Before NEWMAN, Chief Judge, and KELLY and GALLAGHER, Associate Judges.

NEWMAN, Chief Judge:

Appellant seeks reversal of his conviction for robbery. He contends that the government's cross-examination of him and its closing argument, which repeatedly called to the jury's attention the absence of certain witnesses and asked the jury to draw inferences adverse to him from their absence, was prejudicial error. We agree and reverse.[1]

On January 27, 1978, at about 6:30 p. m., Sandra Reaves returned from grocery shopping to her apartment on 25th Street, S.E., Washington, D. C. As she started to unload her groceries, she was stopped by a young man who offered assistance. During this

encounter, he grabbed her purse and ran off. The entire events constituting the robbery took no more than ten minutes. On February 1, at about 6:00 p. m. and on February 2, at about 10:00 p. m., she spotted appellant and identified him as the man who grabbed her purse. After the February 2 spotting, appellant was arrested.

*Trial Proceedings*

Appellant testified in his own behalf, denying any connection with the robbery. The only event he remembered about the evening in question was that he called his cousin from his parents' home in Landover, Maryland, and learned that she had had a baby. On cross-examination, the defendant testified that the call was placed at about 9:00 p. m. and that some family members were at home at that time. The prosecutor then suggested, through cross-examination of appellant, that appellant's family, at his request, testified at the Grand Jury on his behalf and were offered to—but not able to—supply appellant with an alibi for the time of the incident. The prosecutor was fully aware that the government had subpoenaed these family members to the Grand Jury and that they had only testified to not remembering the evening in question.[2]

During closing argument, the prosecutor used this testimony as a basis for his argument before the jury. In pertinent part that argument is as follows:

> Is he telling the truth, that he wasn't the one and proffered at another proceeding an alibi supported by family members and now changes his story, and there is no alibi and no family members.

Defense counsel objected on the ground that appellant did not testify at the Grand Jury and thus, did not testify inconsistently at trial. Counsel also noted that the government subpoenaed the family mem-

---

1. Since we reverse appellant's conviction due to the government's improper use of the missing witness inference, we need not address appellant's other contentions.

2. Defense counsel did not object at this juncture. He later informed the court that at this

point in the trial he was unaware that members of appellant's family had testified at the Grand Jury or at whose request. During a subsequent recess in the trial, he ascertained the facts and later interposed an objection. *See* text at note 3, *infra*.

bers before the Grand Jury.[3] The court sustained the objection, instructed the jury as to the nonexistence of prior inconsistent statements made by appellant concerning an alibi, and directed the prosecutor to correct the misconception given the jury by his improper argument. Unfortunately, the correction offered by the prosecutor compounded the error.

> Okay. The statement which I am referring to is a statement of witnesses which were subpoenaed by the government, not by the defendant. The defendant had nothing to do with it. But at the time, and as he was cross-examined, in cross-examination, those witnesses testified concerning alibi for him. They are not here. Okay, in addition, that none of the witnesses who would corroborate that. Now, one of the witnesses—the witnesses that would corroborate that were witnesses that testified at the Grand Jury, his mother, his father-in-law,[4] his brothers and sisters, if he was home.

> Why weren't they brought here? If that is where he was at and they can prove it. They could prove it.

The prosecutor thus again asked the jury to draw a negative inference from the absence of these witnesses at trial, while knowing that no alibi was offered by the appellant to account for his whereabouts *at the time of the crime.* At most the witnesses referred to could have corroborated an immaterial aspect of appellant's story—where he was at 9:00 p. m. on the evening in question.

> Defense counsel again objected on the ground that there was no basis for arguing what the alleged witnesses could prove. The court sustained the objection. The prosecutor thereafter again argued to the jury that the missing witness inference was sound because, "[T]hey would be able to give you information to support where he was at." The defense again objected. The prosecutor was aware that these family members could not and did not remember

the night in question and were never offered at the Grand Jury, in appellant's direct testimony, or cross-examination as being able to establish where the appellant was *at the time of the incident in question.* The court sustained the objection and cautioned the jury that counsel's argument was not evidence. In spite of these repeated objections, all of which were sustained by the court, the prosecutor continued his closing argument:

> Let's talk about conversations supposedly occurred with the cousin. There was no cousin brought here who could speak about that conversation on the 27th. I am asking you to look at all of the situations and all of the situations in terms of credibility, because that is the issue that comes out now before you. Who is believable? You can determine believability by not only positive factors of the ability of the witness to observe what the witness says they observed, but also from the negative side, what other persons said occurred which was never presented to you. . . .

Here again the prosecutor asked the jury to draw an inference adverse to the appellant from the absence at trial of his cousin, despite the fact that the cousin's testimony was not relevant to prove the nonasserted alibi and also incompetent to prove the appellant's presence in Landover, Maryland, at the time of the call. The defense objected and asked for a mistrial which was denied.

Defense counsel, in his closing argument, tried to defuse any misconceptions created by the prosecutor's improper argument.

> Now Mr. Dent got on the stand and he testified in his own behalf. . . . And he didn't do a very good job of explaining where he was on January 27th. He didn't even know what day of the week it was. So that might be significant if this was the day after, or if he had been arrested that night, or if the 27th was a Friday and he had been ar-

---

**3.** *See* note 2, *supra.*

**4.** Prosecutor apparently was referring to the appellant's step-father, who appeared before the Grand Jury.

rested that weekend, it might have been easy to say, oh yes, on Friday, here I was. But keep in mind this was a week later, that he moved back and forth to people in that area there, and—from his mother's home out in Landover—he didn't know because there wasn't any significant reason why he should remember that date.

Later on, after he was arrested, and through conversations with his cousin, he was able to find out, yes, that was the date she had had a baby, and he remembered that he had talked to her on that date. But that was the only way he could associate that date. None of the people he knew, none of the people he could talk to after the day he was arrested, on February the 3rd, were able to supply him with that kind of information. And I submit to you that that's not consistent or inconsistent with anything except with the problems of a young man who's been accused of a crime a week after it happens.

He hasn't offered any kind of an alibi whatsoever. He hasn't brought you any witnesses to say where he was or to say where he usually was, because he simply doesn't know. . . .

In spite of the prior rulings by the court, the prosecutor in rebuttal argument again made reference to the missing witnesses and in effect again asked the jury to draw an inference adverse to appellant from their absence.

Now, also, what does demeanor have to do with the fact that witnesses were not brought to your attention that may have been able to clarify matters that you must decide? Witnesses that were family members and close contact with the defendant. What does that have to do with credibility? That has nothing to do with credibility. It has something to do with

whether the truth is going to be brought to you from the side of the defendant since he took that stand. Where were they at? Why weren't they here for your inspection?

Once he takes that stand, and once he produces evidence, then you have a right to demand that this evidence be as great as it possibly can be.

\* \* \* \* \* \*

Defense counsel again objected to the prosecutor's argument and renewed his request for a mistrial which was again denied. No instruction or explanation was offered to the jury. Further, in the court's final instructions no mention was made of the improper argument and no corrective instruction was given (other than the standard instruction that statements of counsel are not evidence [5]) to dispel the misconception created by the prosecutor's improper argument.

### Missing Witness Inference

■ Over eighty years ago, the Supreme Court enunciated a rule that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 37 L.Ed. 1021 (1894). The rule is still followed in the District of Columbia. *See, e. g., Coombs v. United States,* D.C. App., 399 A.2d 1313 (1979). The two criteria that must be present before the jury may be invited to infer that the testimony of an absent witness would have been adverse to a party are (1) that the witness is peculiarly within the power of the party to produce, and (2) that the witness' testimony is likely to elucidate the transaction in is-

---

5. This instruction, as given by the court, was:

And you may consider only the evidence which has been properly admitted in the case, and in this case the evidence consists of the sworn testimony of those witnesses whom you have heard address you from the witness stand. Now, ladies and gentlemen, you will be reminded that during the course of argument of each counsel, I had several occasions in each instance to correct matters that counsel had addressed when they made their argument. And this is just a highlight to you, that the statements and arguments of counsel are not evidence. They are only intended to assist you in understanding the evidence and contentions of the parties. . .

sue. If either condition is not present then "[b]oth comment by counsel and instruction by the judge . . . is prohibited." *Conyers v. United States*, D.C.App., 309 A.2d 309, 312–13 (1973).

The peculiarly within the power of the party to produce requirement has meant, in certain cases, the witness' "physical" availability for trial. Thus, cases have held that the requirement is not met where there is a showing that the witness is available for subpoena by the government. *Brown v. United States*, 134 U.S.App.D.C. 269, 271, 414 F.2d 1165, 1167 (1969). *See Coombs v. United States, supra* at 1316. But the ability to subpoena may not, in fact, be decisive if there is a showing that the opposing party learned of the identity of the witness at trial. *United States v. Stevenson*, 138 U.S.App.D.C. 10, 13–14, 424 F.2d 923, 926– 27 (1970). In the same vein, and subsequent to the *Stevenson* decision, we recognized that Super.Ct.Cr.R. 12.1, which affords a mechanism by which the government can obtain the names and addresses of witnesses whom the defendant intends to rely upon to establish an alibi, is a factor to be evaluated in weighing the government's argument that alibi witnesses are peculiarly available to the defendant. *Coombs v. United States, supra*, at 1316–17. *See United States v. Young*, 150 U.S.App.D.C. 98, 106 n.12, 463 F.2d 934, 942 n.12 (1972) (referring to the similar District Court Rule 87).

■ In other cases, peculiarly available has come to mean more than "physical" availability, or available for subpoena. We have extended this concept to include "practical" availability. Although the witness may be physically available to both sides, if a party has a special relationship with a witness, that witness becomes unavailable in a practical sense to the opposing party because his testimony is expected to be hostile. *Hale v. United States*, D.C.App., 361 A.2d 212, 216 (1976) (girlfriend—though the witness was also physically unavailable for trial); *Burgess v. United States*, 142 U.S.App.D.C. 198, 204, 440 F.2d 226, 232 (1970) (government informer); *Milton v.*

*United States*, 71 App.D.C. 394, 397, 110 F.2d 556, 559 (1940) (employer-employee). Thus, a witness may be considered unavailable although amenable to subpoena based upon "his relationship to . . . the parties and the nature of the testimony that he might be expected to give in light of his previous statements or declarations about the facts of the case," *McClanahan v. United States*, 230 F.2d 919, 926 (5th Cir.), *cert. denied*, 352 U.S. 824, 77 S.Ct. 33, 1 L.Ed.2d 47 (1956) (citation omitted), *quoted in Stewart v. United States*, 135 U.S.App.D.C. 274, 278–79 n.25, 418 F.2d 1110, 1114–15 n.25 (1969), and that party's "better opportunity to ascertain his testimony in advance of taking the stand." *United States v. Young, supra*, 150 U.S.App.D.C. at 106 n.15, 463 F.2d at 942 n.15 and cases cited therein.

■ Before the jury is allowed to draw an inference adverse to a party from the absence of a witness, the opposing party must also establish to the court's satisfaction that the missing witness would have given testimony likely to elucidate the transaction. *See Graves v. United States, supra*, 150 U.S. at 121, 14 S.Ct. 40. This means that the testimony, if given, would have been "an important part of the party's case, that his testimony would be noncumulative, and that it be superior to other testimony already given on the matter." *Brown v. United States, supra*, 134 U.S.App.D.C. at 270–71 n.2, 414 F.2d at 1166–67 n.2. *See Morton v. United States*, 79 U.S.App.D.C. 329, 333 n.11, 147 F.2d 28, 31 n.11, *cert. denied*, 324 U.S. 875, 65 S.Ct. 1015, 89 L.Ed. 1428 (1945). Thus, the missing evidence of necessity must be relevant and material, *United States v. Young, supra*, 150 U.S. App.D.C. at 104, 463 F.2d at 940, and "must affirmatively appear from other evidence in the case" to be important to establish some issue in dispute. *McGuire v. United States*, 84 U.S.App.D.C. 64, 65, 171 F.2d 136, 137 (1948). *See generally* Annot., 135 A.L.R. 1375 (1941).

Courts have recognized several dangers inherent in allowing the jury to draw an inference adverse to a party from the absence of evidence. The adverse inference,

which in effect creates evidence from none-vidence, may add a fictitious weight to one side of the case, for example, by giving the missing witness undeserved significance. *Burgess v. United States, supra,* 142 U.S. App.D.C. at 206, 440 F.2d at 234. Similarly, repeated questions or argument concerning witnesses who figure slightly may create a false impression of their value in the eyes of the jury. *United States v. Free,* 141 U.S.App.D.C. 198, 203, 437 F.2d 631, 636 (1970). Additionally, the inference is usually argued in summation when an evidentiary explanation for the absence of the witness no longer can be presented to the jury. Thus, the opposing party, having no opportunity to offer the jury any reason for the absence, cannot mitigate the adverse inference. *Givens v. United States,* D.C.App., 385 A.2d 24, 26 (1978).

■ In recognition of these dangers, courts have established procedures to prevent misuse of the inference. The United States Court of Appeals for the District of Columbia recommended in *Wynn v. United States,* 130 U.S.App.D.C. 60, 64, 397 F.2d 621, 625 (1967), and required in *Gass v. United States,* 135 U.S.App.D.C. 11, 19–20, 416 F.2d 767, 775–76 (1969), that the trial court must first conclude that both conditions are met before a party may comment on the absence of witnesses.[6] We also have required this procedure. *Fleming v. United States,* D.C.App., 310 A.2d 214, 220 (1973); *Conyers v. United States, supra* at 313. Thus, the trial court, in the absence of good reason, *United States v. Young, supra* 150 U.S.App.D.C. at 105, 463 F.2d at 941, must make the factual determination that the two conditions are met. This gives the trial court "considerable latitude in determining 'whether from all the circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one.'" *Shelton v. United States,* D.C.App.,

388 A.2d 859, 863 (1978), quoting *Burgess v. United States, supra,* 142 U.S.App.D.C. at 206 & n.11, 440 F.2d at 234 & n.11. Once these determinations are made, the court then can instruct the jury appropriately on the proper use of the adverse inference. *Gass v. United States, supra,* 135 U.S.App. D.C. at 19–20, 416 F.2d at 775–76. Moreover, even if the court finds that both conditions are met, it still has discretion to deny adversary comment on the absence of those witnesses on the theory that the rule need not be applied broadly or rigidly. *Burgess v. United States, supra,* 142 U.S. App.D.C. at 205, 440 F.2d at 233.

■ This case presents a classic example of why a prior ruling from the trial court is mandated. The witnesses in question were neither peculiarly available nor could they elucidate the transaction. From this record, it is clear that the prosecutor did not follow the required procedure; nevertheless, the trial judge was aware that the factual predicate needed to argue the missing witness inference was lacking. The court sustained several defense objections concerning the adverse inferences suggested by the prosecutor. These rulings make clear that the trial court knew the testimony of the witnesses would be immaterial, and thus could not elucidate the transaction. *See United States v. Young, supra,* 150 U.S.App.D.C. at 104, 463 F.2d at 940. The trial court was correct in this regard since no testimony had been proffered by the defense as to his specific whereabouts at any time material to the robbery. Rather, the government, through cross-examination of appellant, had elicited evidence as to his whereabouts some two hours later. Having thus set up its straw man, the government proceeded to attempt to knock it down by use of the missing witness inference.

6. The following is the rule promulgated by the *Gass* court to help prevent the misuse of the missing witness inference:

[T]hat for the future when counsel, either for the prosecution or the defense, intends to argue to the jury for an inference to be derived from the absence of a witness, an ad-vance ruling from the trial court should be sought and obtained. [T]hat if such argument is to be permitted, an appropriate instruction should be given defining for the jury the conditions under which the inference might be properly drawn. [*Id.* at 19–20, 416 F.2d at 775–76 (footnote omitted).]

Further, we are convinced that although a familial relationship existed between the appellant and the witnesses in question, they were not peculiarly within the appellant's power to produce. Their testimony, as the government was well aware, was not likely to be favorable to the appellant "in light of [their] previous statements or declarations about the facts of the case," *McClanahan v. United States, supra* at 926, quoting *Deaver v. St. Louis Public Service Co.*, 199 S.W.2d 83, 85 (Mo.App.1947), and the government could not claim that appellant had a "better opportunity to ascertain their testimony in advance of taking the stand," *United States v. Young, supra,* 150 U.S. App.D.C. at 106 n.15, 463 F.2d at 942 n.15, since it had already subpoenaed these witnesses and had obtained their testimony prior to trial.[7] Consequently, we hold that the trial court was correct in not allowing the prosecutor to argue an inference adverse to appellant from the absence of his family members, for to do so would be, under the circumstances, both unfair and unreasonable to appellant.

Adherence to the procedure mandated by our holdings in *Fleming, supra,* and *Conyers, supra,* avoids not only the pitfalls highlighted by this case—an improper argument by the prosecutor and a misinformed jury unable to discharge its functions intelligently—but also assures a proper factual predicate necessary for the court's sound exercise of its discretion. *See Johnson v. United States,* D.C.App., 398 A.2d 354 (1979). Toward this end, it is appropriate that where either party intends to argue the missing witness inference he should so inform the court at the earliest opportunity so that an evidentiary hearing, if necessary, may be held to establish the underlying factual situation.

Since we find that the prosecutor inappropriately suggested and argued the missing witness inference and since the defendant repeatedly objected to the improper conduct, we must carefully determine whether, in spite of the instructions given by the court, the improper conduct of the prosecutor sufficiently prejudiced appellant to call for reversal. Upon careful review of the record, and applying the standard enunciated by the Supreme Court in *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946),[8] we cannot say that the error so often repeated did not substantially sway the verdict.

The record reveals that the prosecutor's improper comments were not isolated occurrences happening in the heat of trial. Rather, they reflect a dogged determination by the prosecutor, in the face of repeated adverse rulings by the court, to buttress his case by the missing witness inference all the while knowing that such witnesses did not and could not give appellant an alibi. Furthermore, the inappropriate argument by the prosecutor in rebuttal was never corrected by the court either in prompt instruction to the jury to disregard the argument, or as part of the final jury instructions.[9] In addition, since these repeated references were to persons whose absence was not significant, they cumulated the prejudice "to the point of distortion." *United States v. Free, supra,* 141 U.S.App. D.C. at 203, 437 F.2d at 636.

---

7. *Assuming arguendo* that the evidence sought to be elicited from these witnesses was material and hostile to appellant, the missing witness argument was still inappropriate, in spite of the familial relationship, since the argument would emphasize non-evidence when the government, having already produced these witnesses at the Grand Jury, could have produced them again to give evidence at trial.

8. The standard is as follows:

But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error, it is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand. [*Conyers v. United States, supra* at 313–14, quoting *Kotteakos v. United States, supra,* 328 U.S. at 765, 66 S.Ct. 1239].

9. The government argues that this final error was cured by the court's general instructions. *See* note 5, *supra.*

The government contends that if any error was committed by the prosecutor, it was cured by the court's immediate instructions to the jury to disregard the inappropriate argument. While we are aware that an inappropriately argued missing witness inference may be correctable and the prejudice dispelled in certain circumstances by the trial court promptly instructing the jury to disregard the remarks, *see Conyers v. United States, supra* at 312; *Pennewell v. United States,* 122 U.S.App.D.C. 332, 333, 353 F.2d 870, 871 (1965); *Smith v. United States,* 119 U.S.App.D.C. 22, 23, 336 F.2d 941, 942 (1964), *cert. denied,* 385 U.S. 1017, 87 S.Ct. 736, 17 L.Ed.2d 554 (1967), we find that the instructions given in this case were insufficient to attenuate the prejudice.

Since the prosecutor failed to follow proper procedure mandated by *Gass* and its progeny and is now unable "to show the permissibility of [his] comment[s] . . . he must abide the consequences," *United States v. Young, supra,* 150 U.S.App.D.C. at 105, 463 F.2d at 941, and we must reverse.

*Reversed.*