**UNITED STATES of America**

v.

**Vangel XIARHOS.**

**Crim. A. No. 92–10225–Z.**

United States District Court,
D. Massachusetts.

May 18, 1993.

Charles P. McGinty, Federal Defender Office, Boston, MA, for Vangel Xiarhos.

Ralph J. Cinquegrana, A. Clayton Spenler, Boston, MA, for U.S.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Defendant Vangel Xiarhos stands indicted in three counts for possession of explosives by a felon, felon in possession of a firearm, and possession of an unregistered firearm, in violation of 18 U.S.C. §§ 842(i)(1), 922(g)(1) and 26 U.S.C. § 5861(d). This indictment grew out of an arrest made by Massachusetts State Police Officers C.G. MacKnight and J.A. Albert in Wareham on January 7, 1991. The circumstances of this arrest now give rise to defendant's motion to suppress evidence.

I find the following facts with respect to the circumstances of the arrest. Officers MacKnight and Albert testified that as they drove eastbound on Route 25 in Wareham, at approximately 10:00 p.m., January 7, 1991, they observed a motor vehicle ahead of them travelling under the speed limit and changing lanes repeatedly without signalling.[1] The officers signalled the car to pull over to the breakdown lane, and it did so.

At this time, Officer MacKnight activated the cruiser's take-down lights, which illuminated the stopped vehicle ahead of them. As MacKnight approached the driver's side of the vehicle, he observed the driver, the defendant in this case, staring at him in the rear-view mirror. Then he saw defendant turn, look around, and bend down so that only his back was visible. When MacKnight reached the driver's door, he spoke to defendant, who stared straight ahead, responded in a stuttering, jumbled manner and appeared to be nervous. MacKnight then asked defendant to exit the vehicle.

MacKnight directed defendant to the rear of the vehicle and placed him so that he was facing the trunk of the vehicle with both of his hands on the top of the trunk. He began to pat-frisk defendant for weapons. When he reached defendant's mid-section, defendant moved his right hand towards his waist. The officer put defendant's hand back on the trunk and resumed the pat-down, but defendant again lifted his hand towards his waist. At this point, MacKnight called Officer Albert over to the car to assist in the pat-down. During the course of the frisk, MacKnight felt a hard object in defendant's right coat pocket. He removed the object and saw that it was a metal paprika can with metal screws attached to it by means of black electrical tape. Albert cut the electrical tape slightly to examine the contents of the object, and gunpowder and matchheads fell out onto the trunk. It contained neither fuse nor battery. MacKnight and Albert testified that they could not initially identify the object, but one of the backup officers who had arrived on the scene suggested that it might be a bomb. The officers subsequently found a hypodermic needle and syringe in defendant's other coat pocket.

The defendant was placed under arrest and transported to the Bourne State Police Barracks, charged with possession of a hypodermic needle and cited for a "marked lanes" traffic violation. A bomb specialist, Scott Costello, was called in to examine the object, and he pronounced it to be an "infernal machine." Defendant was then charged also with possession of such a device.

■ First, defendant contends that the state court's finding at the probable cause hearing, that defendant was "not responsible" for the marked lanes violation, precludes the United States from relying on that traffic violation as a legitimate reason for stopping defendant's car. However, that finding is not binding on this Court. Since the United States did not participate in or control the state court probable cause hearing, defendant cannot establish the privity required to preclude the issue from a determination in this Court. *See United States v. Bonilla Romero*, 836 F.2d 39, 43–44 (1st Cir.1987), *cert. denied*, 488 U.S. 817, 109 S.Ct. 55, 102 L.Ed.2d 33 (1988).

---

1. Defense counsel suggests that the officers' testimony is not credible because at a probable cause hearing held in state court in February 1991, they admittedly testified falsely that each was driving his assigned vehicle. Nevertheless, I credit their testimony in this Court. They straightforwardly owned up to their false statements in the earlier proceeding, which they made because of their concern that they were violating state police regulations by riding together in the same vehicle.

■ Next, I find that MacKnight was justified under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), to ask defendant to get out of the car and to pat him down. Given the late hour, the somewhat erratic driving just before the stop, defendant's movements as the officer approached the car, and his apparent nervousness, MacKnight could .reasonably conclude that defendant may have posed a risk to his safety. *See U.S. v. Stanley*, 915 F.2d 54 (1st Cir.1990).

■ The protective search subsequent to a *Terry* stop must, however, be limited in scope and confined to determine whether any weapons are present and to ensure the safety of the officer and others in the area. 392 U.S. at 29, 88 S.Ct. at 1884. If the officer encounters a suspicious object during the pat-down, he may of course remove it and conduct a "plain view" examination of it. If this object is a closed container, the officer may not open the container to examine its contents unless he has an articulable suspicion that the closed container poses a danger to himself or others nearby. *See Sibron v. New York*, 392 U.S. 40, 64–65, 88 S.Ct. 1889, 1903–04, 20 L.Ed.2d 917 (1968); *United States v. Collins*, 439 F.2d 610, 617–18 (D.C.Cir.1971).

■ Officers MacKnight and Albert both testified that they could not identify the object when it was removed from defendant's pocket. Indeed, the evidence suggests that they began to suspect that the object might be a homemade bomb only after Albert had pried open the top of the can and revealed the contents—gunpowder and matchheads. Since the questionably-adorned paprika can appeared to pose no immediate danger to the officers, Albert exceeded the permissible scope of the protective search when he opened it.

■ Nevertheless, during the course of the pat-down, the officers did find a hypodermic needle, the possession of which constituted legitimate grounds for arrest. The paprika can therefore would have been "inevitably discovered" pursuant to either the search incident to arrest or the inventory search at the stationhouse. *See Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984). An officer may open the contents of a closed container while conducting either type of search. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983) (not unreasonable for police, as part of routine procedure incident to incarcerating an arrested person, to search any container or article in his possession); *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (opening crumpled cigarette package found on defendant's person both warranted and reasonable in the case of a lawful custodial arrest for operating vehicle after revocation of permit). Accordingly, the paprika can/infernal device is admissible under the inevitable discovery doctrine to the exclusionary rule.

For the foregoing reasons, defendant's motion to suppress (# 21) is denied.