**Pernell LAWSON, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 84–1434.

District of Columbia Court of Appeals.

Submitted Nov. 22, 1985.
Decided Sept. 8, 1986.

J. Herbie DiFonzo, Washington, D.C., appointed by this court, was on brief for appellant.

Joseph E. diGenova, U.S. Atty., Michael W. Farrell, Bruce Z. Marshack and Paul L. Colby, Asst. U.S. Attys., Washington, D.C., were on brief for appellee.

Before PRYOR, Chief Judge, NEWMAN and ROGERS, Associate Judges.

NEWMAN, Associate Judge:

Pernell Lawson was convicted of armed robbery, and assault with intent to commit robbery while armed. He challenges that portion of the government's closing argument wherein the prosecutor, without obtaining the trial court's permission, referred to Pernell's failure to call certain persons as witnesses and urged the jury to draw an adverse inference from such failure. We hold that the prosecutorial remarks' were improper and, in the circumstances of this case, deprived appellant of a fair trial. We reverse his convictions.

## I

The indictment charged that Lawson committed the offenses of the armed robbery of Jovanny Sizemore and assaulting Joseph Holland with the intent to rob Sizemore. Both of the complaining witnesses testified that on May 13, 1983, they were en route from their high school, Woodrow Wilson High, to a nearby fast food restaurant for lunch. As they were walking along 41st Street, N.W., near the intersection of Davenport Street, Holland noticed some of his friends ride by in a car. When the car stopped, Holland walked over to talk with his friends and instructed Sizemore to wait for him at the corner of 41st and Davenport. While Sizemore stood at the corner, Lawson and an unidentified accomplice approached Sizemore from behind. Lawson grabbed Sizemore and demanded his watch and ring. When Sizemore offered resistance, Lawson pulled out a pistol and hit Sizemore with it. Upon realizing that he was being robbed at gunpoint, Sizemore stopped resisting.

At this point, Holland returned to the scene and saw Sizemore in the grip of his armed assailant. When Holland inquired as to what was happening, Lawson pointed the pistol at Holland told him to stay back

or he would be shot. Holland retreated. Lawson took Sizemore's watch and ring and left in the company of the unidentified accomplice.

Appellant Lawson testified as the only defense witness. He recalled that he and a friend were in the area of Wilson High School on May 13, 1983, when they spotted Sizemore and Holland walking along 41st Street, N.W. Lawson and his unidentified friend followed the two young men for a brief period until Holland walked away, leaving Sizemore to await his return. According to Lawson, he approached Sizemore and requested that Sizemore remind Holland that he owed Lawson some money from a previous gambling incident, and he (Lawson) wanted the matter settled.[1] Sizemore refused to intercede and a fistfight ensued. Sizemore pulled off his ring, and was in the process of removing his watch to fight, when appellant Lawson struck him with a piece of pole which he picked up off the ground. Lawson denied having a handgun. During the fight, Lawson's unidentified friend was standing three or four feet away; Holland was not present during the altercation. After the fight subsided, Lawson and his friend walked away. Lawson testified that he later learned his friend had picked up Sizemore's watch and ring during the fight, and that he had told his friend to return the items.

On cross-examination, Lawson identified his friend by the first name of "Ashley," but testified that he did not know his last name. He admitted having been to Ashley's house and knowing where Ashley lived; however, Lawson denied knowledge of Ashley's whereabouts at the time of trial.

During closing argument, without first seeking approval from the trial court, the Assistant U.S. Attorney argued as follows:

---

1. Specifically, Lawson testified that he won some money from Holland during a crap game the previous summer. Thereafter, Holland sent two friends to rob Lawson as he was leaving from the game site. According to Lawson, the two men robbed him of the money he had won

from Holland. Appellant further stated that on the day of the present incident (May 13, 1983) he was attempting to get his money back, and approached Sizemore only to request that he inform Holland of the unsettled matter.

What happened straight and simple, is an armed robbery. And here's a young man that has a good friend. A good friend that came to his house that morning. A good friend that he tells you was a witness to this fight that he had with little Jovanny Sizemore, the man he had to cold conk, while his hands were both occupied doing something else, little Jovanny Sizemore. The man he needed to grab a pole to beat off, little Jovanny Sizemore.

Isn't that ridiculous....

Defense counsel made no reference to the missing witness in his closing argument. On rebuttal, the prosecutor made the following additional remarks:

Naturally, you don't have any reasonable doubt. Now, a reasonable doubt is something that will give you pause before you decide what happened here. And you know what happened here. Think for a minute.

Here's a young man facing some number—some significant penalty, perhaps, for committing two very serious crimes, and he's on trial and he knew he was coming to trial. And he's known fro [sic] a while that he was coming to trial. And he's got a good friend who he said witnessed the event. Where is he? Where is the friend who witnessed the event?

If you were on trial and charged with a serious crime and a friend of your [sic] had been there when the event was supposed to be taking place, would you bring him in; put him in the jury box [sic] and let him tell the good people sitting up here what it was he saw, so you don't have to sit there along [sic], hoping against hope, a wing and a prayer, that somebody will believe some impossible story about cold conking some little guy and hitting him with a pole over some money somebody else owed him?

And what about a crap game? Did you ever hear about a crap game with two people in it? Where is [sic] the other people who were in the crap game?

Why aren't they here? Obvious. They are not here because there was no crap game.

The trial court overruled defense counsel's objection to the prosecutor's missing witness arguments, and gave no curative instruction to the jury.

II

In *Graves v. United States*, 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893), the Supreme Court enunciated the missing witness rule as follows: "[I]f a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." Recent cases have elaborated upon the general rule by defining more precisely the requirements that must be met by a party seeking to employ a missing witness argument under the prerequisites set forth in *Graves*. Before a party may argue an adverse inference as to an absent witness, counsel must seek permission from the court, and the court must determine (1) that the witness in question is peculiarly available to the party against whom the inference is sought, and (2) that the witness' testimony would have elucidated the transaction at issue. *See Miles v. United States*, 483 A.2d 649, 657 (D.C. 1984); *Garris v. United States*, 465 A.2d 817, 822 (D.C.1983), *cert. denied*, 465 U.S. 1012, 104 S.Ct. 1013, 79 L.Ed.2d 243 (1984); *Parks v. United States*, 451 A.2d 591, 614 (D.C. 1982); *Thomas v. United States*, 447 A.2d 52, 57 (D.C.1982); *Simmons v. United States*, 444 A.2d 962, 964 (D.C.1982); *Dent v. United States*, 404 A.2d 165, 169–70 (D.C.1979). Argument by counsel and instructions by the trial judge regarding inferences to be drawn as to an absent witness are prohibited if either condition is not met. *Kleinbart v. United States*, 426 A.2d 343, 351 (D.C.1981); *Dent, supra*, 404 A.2d at 169–70; *Conyers v. United States*, 309 A.2d 309, 312–13 (D.C.1973). Moreover, as we said in *Thomas v. United*

*States, supra,* and reiterated in *Miles v. United States, supra,* 483 A.2d at 658:

[E]ven where the prerequisites of elucidation and peculiar availability are satisfied, the court has discretion to refuse the instructions. "This discretionary decision should be guided by reference to the underlying rationale for the doctrine, by considering 'whether from all circumstances an inference of unfavorable testimony from an absent witness is a natural and reasonable one'."

Indeed, given the fact that the missing witness inference creates evidence from non-evidence, it is less likely that we will find an abuse of discretion where the trial court refuses to give a missing witness instruction and permit a missing witness argument, than where its ruling is to the contra.

■ In the present case, the prosecutor failed to seek court permission for a "missing witness" argument. The government contends that the prosecutor's line of argument did not require permission from the court because the remarks did not fall within the perimeter of the classic missing witness rule, but rather were the type of comments on the mere absence of a witness that this court has approved of despite counsel's failure to seek permission from the trial court. Of course, we recognize that in past cases we have distinguished the "incomplete" missing witness argument. In such an argument, counsel merely comments upon the absence of a witness, but refrains from "directly [urging] the jury to draw from the fact [of absence] an inference adverse to appellant." *Logan v. United States,* 489 A.2d 485, 490 (D.C. 1985) (citing *Parks v. United States,* 451 A.2d 591, 614 (D.C.1982), *cert. denied,* 461 U.S. 945, 103 S.Ct. 2123, 77 L.Ed.2d 1303 (1983)); *see also Hammill v. United States,* 498 A.2d 551, 556 (D.C.1985); *Chapman v. United States,* 493 A.2d 1026 (D.C.1985); *accord Burgess v. United States,* 142 U.S.App.D.C. 198, 207, 440 F.2d 226, 235 (1970). However, in light of this court's recent decision in *(James E.) Ar-nold v. United States,* 511 A.2d 399 (D.C. 1986), we must reject the government's conclusion that permission from the trial court is not required for mere comment upon a witness' absence. In *Arnold, supra,* this court specifically held that a lawyer who proposes to make a missing witness argument, "even if it goes no further than to note the absence of the witness, should first obtain permission from the court to do so in order to avoid injecting prejudicial error into the trial." *Id.,* at 416 (citing *United States v. Young,* 150 U.S. App.D.C. 98, 107 n. 16, 463 F.2d 934, 943 n. 16 (1972), and *Conyers v. United States,* 309 A.2d 309, 313 (D.C.1973)).

■ In the present case, the record reveals two instances where the prosecutor made reference to the absence of certain witnesses without the trial court's permission. The prosecutor commented upon the absence of Lawson's "good friend," who supposedly was an eyewitness to the fight and, according to Lawson, the person who actually stole the complaint's jewelery. He went on during rebuttal to implore the jury to question whether "if [they] were on trial and charged with a serious crime and a friend of your [sic] had been there when the event was supposed to be taking place, would you bring him in ... and let him tell the good people sitting up here what it was he saw ...?" Thus, the prosecutor argued to the jury not only that Lawson's friend did not testify, but also urged the jury to draw an adverse inference by posing the question—if it were you on trial, wouldn't you have called this "eyewitness" to testify in your defense? We hold that such conduct was improper as the comments were made without the trial court's permission. *See Arnold, supra,* at 416.

The impropriety in this instance was heightened by the fact that a missing witness argument should not have been permitted by the trial court even if the prosecutor had properly sought permission prior to his argument. As previously noted, upon request, the court is obliged to make determinations as to elucidation and pecu-

liar availability before it allows such argument. Moreover, even where both elements have been satisfied, the trial judge, in his discretion, may still refuse to allow the missing witness argument and instruction. *See* discussion *supra* at 789. Under the facts of this case, the "peculiar availability" prong of the test cannot be satisfied.[2]

■ In *Thomas v. United States, supra*, 447 A.2d at 57, we noted that the "peculiar availability" prong of the missing witness argument requires a finding "that the party had the physical ability to locate and produce the witness and there was such a relationship, in legal status or on the facts as claimed by the party as to make it natural to expect the party to have called the witness." *Id.* (quoting *United States v. Young, supra*, 150 U.S.App.D.C. at 107, 463 F.2d at 943). A witness who has been identified by the defendant as the perpetrator of the crime, *Pennewell v. United States*, 122 U.S.App.D.C. 332, 353 F.2d 870 (1965), or who has a fifth amendment privilege as to the testimony in question is not considered available to either party. *Harris v. United States*, 430 A.2d 536, 543 n. 9 (D.C.1981); *Anderson v. United States*, 352 A.2d 392, 394 n. 3 (D.C.1976); *Bowles v. United States*, 142 U.S.App.D.C. 26, 439 F.2d 536, 542 (1970), *cert. denied*, 401 U.S. 995, 91 S.Ct. 1240, 28 L.Ed.2d 533 (1971); *Carver v. United States*, 312 A.2d 773 (D.C.1973). The United States Court of Appeals in this jurisdiction has "expressly outlawed comment ... on absent witnesses which would have the effect of suggesting that an inference be drawn against a defendant because he failed to call to the stand a witness who would have to incriminate himself." *Bradley v. United States*, 420 F.2d 181, 186 (D.C.Cir.1969). In *Bradley*, the prosecutor commented and urged the jury to draw an adverse inference from Bradley's failure to call as a witness a person whom he claimed to have been the actual perpetrator of the crimes charged. The court held the remarks improper because the prosecutor had knowledge that the person named by Bradley did in fact exist, had recently been convicted of a re-

---

2. The government contends that remarks made by the trial judge, during a bench conference where defense counsel first raised objection to the prosecutor's argument, indicate that the trial court would have granted the missing witness argument had permission been properly sought in advance. We disagree. Following the prosecutor's argument counsel approached the bench and the following dialogue occurred:

> [DEFENSE COUNSEL]: I didn't want to interrupt [the prosecutor's] rebuttal closing, but I would like to register my objection to his strong implication that there is a missing witness on two separate levels here.
>
> THE COURT: You didn't ask for the instruction. If he had, I probably would have given it. But he certainly can cargue [sic] that.
>
> [DEFENSE COUNSEL]: We would object to that, primarily because at least in terms of the person who was allegedly present at the fight or the robbery, ... that person would be unavailable because he would have a Fifth Amendment problem, because he is alleged to have taken the stuff. He is alleged to have committed a crime.
>
> THE COURT: That was very thinl [sic]. I saw you try to get that in, some self-serving hearsay. No. His name is Ashley; he [defendant] knows where·[Ashley] lives; [defend-

ant] visits him, has visited him, [and he is] peculiarly available to him ...

> ... There is nothing improper. In fact [the prosecutor] would be remiss in his duties if he didn't argue it.

\* \* \* \* \* \*

Transcript 104–05. It is the well-established rule in this jurisdiction that, in the absence of good reason, the trial court is obliged to make an advance ruling upon whether a missing witness argument can be properly urged before the jury. *Dent, supra*, 404 A.2d at 171; *see also United States v. Young, supra*, 150 U.S.App.D.C. at 105, 463 F.2d at 941. Here, the prosecutor neglected to seek advance permission from the court, and it was not until after defense counsel raised objection to the prosecutor's argument that the trial court briefly addressed the propriety of the missing witness argument. We cannot reasonably conclude that the above-cited dialogue addressed fully the issue of peculiar availability in the context of a missing witness argument. *See Simmons v. United States*, 444 A.2d 962, 964 (D.C.1982) (trial judge obliged to make an "informed factual determination" as to the required conditions). One crucial issue, i.e., whether the absent witness would have had a fifth amendment right against self-incrimination, was never addressed by the trial judge.

markably similar crime in the same district court, and therefore, would have pled the privilege against self-incrimination if he had been subpoenaed by the defense. *Id.* at 186. *Bradley* is binding upon this court. *See M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) (decisions rendered by the United States Court of Appeals for the District of Columbia prior to February 1, 1971 "constitute the case law of the District of Columbia" and are thus binding precedent).

■ Here, the indictment charged appellant Lawson "and a person whose identity is unknown to the Grand Jury" with each of the charged crimes. The testimony of both complaining witnesses, as well as that of Lawson, pointed to only one person as Lawson's accomplice; it was this unknown individual, whom Lawson identified as "Ashley," that the Grand Jury indicted as Lawson's codefendant. Thus, in light of *Bradley,* we must conclude that the missing witness argument would not have been allowed by the trial court because the prosecutor knew that the absent witness, "Ashley," existed and had been formally indicted of the charges along with Lawson. Even if Lawson had subpoenaed "Ashley", he could have invoked the fifth amendment right against self-incrimination.[3]

■ Turning to the second instance of prosecutorial remark upon absent witnesses in this case, we conclude there were further improprieties in the prosecutor's argument. During rebuttal argument, without seeking the court's permission, the prosecutor commented upon Lawson's testimony about a crap game (*see supra* at 789). The prosecutor remarked as follows: "And what about a crap game? Did you ever hear about a crap game with two people in it? Where [are] the other people who were in the crap game? Why aren't they here? Obvious. They were not here because there was no crap game." The cited remarks go beyond the mention of a

witness' absence and urge the jury to infer that the witnesses were not called because either they do not exist or their testimony would not support Lawson's testimony that a crap game had in fact taken place. Such an argument is in flagrant disregard of the well-established rule requiring counsel to seek permission from the trial court prior to making a missing witness argument such as the one made in this instance. *See* cases cited *supra* at 789.

### III

Having determined that the prosecutor's remarks were improper, we must now turn to the question of whether the error constituted a substantial prejudice against Lawson's case. *Kotteakos v. United States,* 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). Generally, in evaluating cases of prosecutorial misconduct, we must consider the following factors to determine whether reversal is required: " '(1) the gravity of the misconduct; (2) the relative strength of the government's evidence; (3) the centrality of the issue affected (its direct relationship to the issue of guilt or innocence), and (4) the mitigating efforts that were made.' " *Parks, supra,* 451 A.2d at 611–12 (quoting *Johnson v. United States,* 386 A.2d 710, 713 (D.C.1978) (citations omitted)). Moreover, in *Thomas, supra,* 447 A.2d at 59, we noted that cases involving missing witness errors require an additional criterion of review:

> Since prejudicial effect will depend largely on facts not before the court, i.e., what the content of the missing testimony would have been, it is difficult for an appellate court to find the error harmless with the requisite level of certainty. Accordingly, where the defendant's credibility is a key issue and the missing witness inference goes to that credibility, an improper argument ... will ordinarily require reversal.

*See United States v. Free,* 437. F.2d 631, 636 (D.C.1970), improper for prosecutor to imply non-existence, "at least where he has been given reasonable advance notice of that person's identity" *id.*

---

**3.** We note that the prosecutor's remarks questioning the existence of "Ashley" were additionally improper in light of the corroborated testimony which established the existence of an accomplice and the indictment recognizing "Ashley" as the accomplice to the crimes charged.

*Id.* (citing *Simmons v. United States, supra,* 444 A.2d at 965; *Coombs v. United States,* 399 A.2d 1313, 1318 (D.C.1979); *Haynes v. United States,* 318 A.2d 901, 903 (D.C.1974)).

■ Applying these principles, we hold that reversible error resulted from the prosecutor's improper missing witness remarks. The comments did bear directly on the issue of Lawson's guilt, as they urged the jury to doubt the credibility of Lawson's testimony regarding the existence of eyewitnesses and events he cited in defense of the charges against him. *See Simmons, supra* (direct relation to defendant's guilt where comment referred to a missing witness allegedly with defendant in car where gun was found); *Dent, supra,* 404 A.2d at 171 (direct relation where comment regarded a "missing" alibi witness); *Coombs, supra,* 399 A.2d at 1315, 1316 n. 7 (same); *Givens v. United States,* 385 A.2d 24, 28 (D.C.1978) (direct relation where comment referred to "missing" eyewitness to crime). Further, no curative instructions were given by the trial court to mitigate the adverse inference created from the improper comments, and the strength of the government's case was not such to preclude a finding of reversible error. *Cf. Parks v. United States, supra,* 451 A.2d at 615 (misconduct not prejudicial, given strength of government's case, even where issue affected was defendant's credibility); *Jenkins v. United States,* 374 A.2d 581, 585 (D.C.1977) (same). The evidence consisted primarily of the word of two complainants against that of appellant Lawson. No corroborative evidence was adduced by the government,[4] and therefore, resolution of the case amounted to a contest of witness credibility left for the jury to decide.

Under the circumstances of this case, we conclude that the jury may well have been influenced by the prosecutor's improper argument. As we said in *Thomas, supra,* and reiterated in *Miles, supra,* 483 A.2d at 658–59:

This and other recent cases illustrate that missing witness inferences are being sought, and are often permitted, in a much broader class of circumstances than the doctrine was ever meant to reach. This has occasioned numerous reversals and thus led to retrials that could easily have been avoided. The upshot is that both the court's and the parties' time and resources are expended unnecessarily. A more restrained and cautious use of the doctrine would not only be truer to its underlying rationale, but would decrease the unnecessary burden on the judicial system that results from its abuse.

*Id.* (citations omitted).

The repeated misuse of another instruction and argument, *Falsus In Uno,* eventually caused us to interdict its use. *See Kinard v. United States,* 416 A.2d 1232, 1235 (D.C.1980). We hope that a more restrained usage of the missing witness instruction and argument will enable us to avoid doing likewise as to them.

*Reversed.*

---

**4.** The testimony and exhibits regarding the identification of Lawson by the complainants were of little consequence in this case, where Lawson conceded his presence at the scene but rendered a different account of the occurrence.