**Donald CARR, Jr. and Anthony L. Carr, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 85–1102, 85–1231.**

District of Columbia Court of Appeals.

Argued April 8, 1987.
Decided Oct. 8, 1987.

Joseph J. Bernard, Washington, D.C., appointed by this court, for appellant Donald Carr, Jr.

Thomas K. Clancy, Washington, D.C., appointed by this court, for appellant Anthony L. Carr.

Joan C. Barton, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Michael W. Farrell and Helen M. Bollwerk, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before MACK, ROGERS and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This case involves a "missing witness" who in fact was introduced to the jury by the defense but whom the defense decided not to call. The prosecutor was allowed to argue that the jury could infer that the witness's testimony would have been harmful to the defense case and the trial court gave the standard missing witness instruction. We hold that such use of the missing witness inference on the facts of this case constituted reversible error.

### I

Appellants are two brothers, Anthony and Donald Carr, who were convicted in their second trial[1] of burglary, robbery, and mayhem, all while armed. The complainant, Grady Thomas, answered a knock at his apartment door. Two men rushed in at gunpoint and robbed the apartment. In the process, they badly mauled Thomas with both fist and gunstock.

Both appellants presented alibi defenses. Anthony testified that from 6 p.m. to 9 p.m. during the evening in question (the robbery occurred about 8 p.m.), he and his mother were attending to his sick grandmother.

Anthony's mother testified in support of his story; his grandmother could not remember the specific evening in question, but she testified that Anthony ordinarily attended to her at that time of day. Anthony further testified that at 9 o'clock that evening, Samuel Eates, a long-time friend, came to the grandmother's house and he and Anthony went out for a beer. Donald did not take the stand, but his mother testified that Donald was at home when she left to go to the grandmother's residence and his father testified to the best of his knowledge Donald was at home until 10:45 that night. Although Samuel Eates had been introduced as a defense witness at the beginning of the trial (including name, home address, and place of employment), he was not called by the defense in presenting the alibi defense.

During the discussion about instructions, the prosecutor proposed that a missing witness instruction be given. Defense counsel for Anthony objected. As "an officer of the court," she proffered that Eates was not called because he was unable to remember the day in question, although he had from time to time picked up Anthony at the grandmother's house. The trial court with no elaboration ruled in the government's favor and agreed to give the instruction.

Subsequently, during rebuttal closing argument, the prosecutor called on the jury to make an adverse inference from Eates's nonappearance.[2] Following that rebuttal,

---

1. The first trial, involving 36 counts, resulted in a hung jury. Some counts were subsequently severed, and the second trial involved four joint counts, on all of which appellants were convicted.

2. The prosecutor's exact words were as follows:
    Lastly, ladies and gentlemen, I want to talk about this alibi. And that is what it is. It is an alibi that they told you that they put on for Donald and Anthony Carr. Do you remember when you first came in here Monday and the witnesses were introduced to you by Ms. Lapidus and Mr. Bernard? Do you remember a witness by the name of Samuel Eates? I was writing down everyone's names when they came in here. Do you remember that Samuel Eates? Four people that were in the front. There was Mr. Falcinelli and Donald Carr, Sr.,

and his mother and grandmother. And then remember at the end there was a man. He had on a brown coat and brown shoes and light tan pants. He was introduced as Samuel Eates. Where is Samuel Eates? Why didn't they bring Samuel Eates? What would Samuel Eates say? The one man that is not a family member that could back up what they were saying. Where was he? And why didn't he get on the witness stand? I don't see him out there either.
    Ladies and gentlemen, Judge Ryan will tell you, he is going to give you what is called the missing witness instruction. He is going to tell you in so few words, you can hold that one against them. He will tell you that you can infer, you don't have to, but you may infer that the failure of the witness to get on the stand, you may infer that his testimony

Donald's counsel noted the prosecutor's use of the missing witness argument and asked that the court in its instruction make it clear that the missing witness inference could be used only against Anthony.[3] The court declined to do so, saying that the instruction on "evidence admitted against one defendant only" would suffice.[4] The trial court then included in its instructions the missing witness charge in its usual form.[5]

## II

Although the missing witness inference has ancient roots, *see* 2 J. WIGMORE, EVIDENCE §§ 286–90 (Chadbourn rev.1979), we have been chary of its use in criminal prosecutions, primarily because of concern that the inference creates evidence from nonevidence.[6] Recently, we summarized the applicable law as follows:

> Before a party may argue an adverse inference as to an absent witness, counsel must seek permission from the court, and the court must determine (1) that the witness in question is peculiarly available to the party against whom the inference is sought, and (2) that the witness' testimony would have elucidated the transaction at issue. Argument by counsel and instructions by the trial judge regarding the inferences to be drawn as to an absent witness are prohibited if either condition is not met.

*Lawson v. United States*, 514 A.2d 787, 789 (D.C.1986) (citations omitted). In addition, "this exercise of discretion must itself be based on a firm factual foundation and be exercised in an informed and rational manner if it is to withstand appellate scrutiny." *Simmons v. United States*, 444 A.2d 962, 964 (D.C.1982). The party seeking the missing witness inference "must establish the two foundation conditions to the court's satisfaction." *Id.* And even if the evidentiary predicates are established, the trial court "still has considerable latitude to refuse to give a missing witness instruction, where it determines from all of the circumstances that the inference of unfavorable testimony is not a natural or reasonable one." *Id.; see also Miles v. United States*, 483 A.2d 649, 658 (D.C. 1984).

At trial, the prosecutor based his argument for the missing witness inference on the grounds that Eates was peculiarly available to the defense because they had presented him as a witness, and that he was "unavailable" to the government because he had left the courtroom area prior to the close of the defense case. We have held that a witness can be peculiarly available when "physically available" to only one of the parties, for example, to a defendant, but beyond the subpoena power of the government. *Coombs v. United*

---

> would have hurt them, would have been harmful. Where is Samuel Eates?
>
> The prosecutor then concluded the rebuttal by attacking the credibility of each of the defense witnesses for both appellants.

3. During the colloquy on this point, the court also further questioned the government on the physical availability of Eates.

4. Criminal Jury Instructions for the District of Columbia, No. 2.53 (3d ed. 1978), which reads:

> Certain evidence was admitted only with respect to a particular defendant, and not against any other defendant. You may consider such testimony only with respect to the defendant against whom it was offered. You must not consider it in any way in your deliberations with respect to any other defendant.

5. The court instructed the jury:

> Now, if a witness who could have given material testimony on an issue in this case was

> peculiarly within the power of one party to produce and was not produced by that party, and his absence has not been sufficiently accounted for or explained, then you may, if you deem it appropriate, infer that the testimony of the witness would have been unfavorable to the party who failed to call him. However, no such inference should be drawn by you with regard to a witness who was equally within the power of either party to produce or whose testimony would have been merely cumulative or immaterial.

*See* Criminal Jury Instructions for the District of Columbia, No. 2.41 (3d ed. 1978).

6. *See, e.g., Lawson v. United States*, 514 A.2d 787, 793 (D.C.1986); *Miles v. United States*, 483 A.2d 649, 658–59 (D.C.1984); *Thomas v. United States*, 447 A.2d 52, 58 (D.C.1982). The Maine Supreme Court recently overruled prior contrary cases and barred use of the inference entirely in criminal cases. *State v. Brewer*, 505 A.2d 774 (Me.1985).

*States,* 399 A.2d 1313, 1316 (D.C.1979).[7] Plainly this was not the case here. Eates was introduced to the jury at the start of the trial, and the government at that time knew his name, address, and place of employment.[8] We have rejected any rule which holds that witnesses are rendered automatically physically unavailable whenever the opposing party learns of their existence for the first time at trial. "In many circumstances, a party may readily secure by subpoena the testimony of a witness who comes to that party's attention for the first time during trial." *Miles v. United States, supra* at 658 n. 9. Such is the case at bar. Eates was within the government's subpoena power. The only attempt to secure Eates as a witness was a search by the prosecutor made at the time the defense rested without calling Eates.[9] Our case law cannot be stretched to allow this situation to constitute physical unavailability. *See Hinnant v. United States,* 520 A.2d 292, 294–95 (D.C.1987); *Dent v. United States,* 404 A.2d 165, 170 (D.C.1979); *Coombs v. United States, supra,* 399 A.2d at 1316–17.

▮ However, the government contends that even if Eates was physically available to the prosecution, he was still "practically available" only to appellants. We spoke of that concept in *Thomas v. United States,* 447 A.2d 52, 58 (D.C.1982) (emphasis in original; citations omitted), where we said:

> But the ability to hail the witness into court is not enough. Practical availability is also required. The party's ability to produce the witness, or his reasons for doing so, must be stronger than those of

the party seeking an inference in his favor. Otherwise, an inference might just as well be drawn *against* the party who favors a missing witness inference. A finding of peculiar availability may be justified where circumstances suggest a potential bias in favor of one party, *e.g.,* where he is employed by that party.

Similarly, in *Dent v. United States, supra,* 404 A.2d at 170 (citations omitted), we said:

> Although the witness may be physically available to both sides, if a party has a special relationship with a witness, that witness becomes unavailable in a practical sense to the opposing party because his testimony is expected to be hostile. Thus, a witness may be considered unavailable although amenable to subpoena based upon "his relationship to ... the parties and the nature of the testimony that he might be expected to give in light of his previous statements or declarations about the facts of the case," and that party's "better opportunity to ascertain his testimony in advance of taking the stand."

Under these established tests, Eates could not have been found to be "practically available" only to the defendants on the record presented here. First, with respect to a relationship to one party that might show bias or hostility as to preclude in practical terms a witness's availability to the other party, *Dent* uses, as illustrations, a girl friend, government informer, and employer.[10] The record in this case shows that Eates and the defendant were long-

---

7. It has been observed that cases of this sort "are increasingly less frequent, due in part, no doubt, to the growth of discovery and other disclosure requirements." McCormick on Evidence, § 272 at 805 (3d ed. 1984). *See, e.g.,* Super.Ct.Crim.R. 12.1, which provides for notice of alibi.

8. Furthermore, the government presumably knew of appellants' intention to use an alibi defense since this was the second trial of the case. Eates, however, had not been contacted by the defense at the time of the first trial.

9. The prosecutor indicated that he had intended to call Eates as a witness if the defense did not. He argued that the defense improperly excused Eates without the permission of the court. The

trial court made no clear finding on this point, simply saying "All right. You have satisfied me."

10. *Hale v. United States,* 361 A.2d 212, 216 (D.C. 1976) (girlfriend); *Burgess v. United States,* 142 U.S.App.D.C. 198, 204, 440 F.2d 226, 232 (1970) (government informer); *Milton v. United States,* 71 U.S.App.D.C. 394, 397, 110 F.2d 556, 559 (1940) (employer-employee). *But cf. Hinnant, supra,* 520 A.2d at 294–95 (employer not peculiarly available; practicality aspect not addressed). *See generally* Annotation, 5 A.L.R. 2d 893 (1949) (compilation of relationships that have figured in practical availability analysis).

**1014**

time friends.[11] But "friend" can have a wide range of meanings. Friends testify against other friends. That relationship alone cannot justify the missing witness instruction, at least without further exploration. The issue was never squarely put before the trial court in the missing witness context. We have held that it is error to give a missing witness instruction "absent articulated consideration by the trial judge." *Simmons v. United States, supra,* 444 A.2d at 964–65.

More significantly, in this case the record is not silent on the "nature of the testimony [Eates] might be expected to give." To the contrary, defense counsel related to the court the specifics of her interview with Eates and his inability to remember the evening in question.[12] Such testimony would not be unfavorable to the defendants, as the inference postulates, but basically neutral in nature. Use of the missing witness argument is negated when the party shows circumstances that "would, in ordinary logic and experience, furnish a plausible reason for nonproduction." *See Burgess v. United States,* 142 U.S.App.D.C. 198, 209–10, 440 F.2d 226, 237–38 (1970) (concurring opinion); *Critzer v. Shegogue,* 236 Md. 411, 421, 204 A.2d 180, 185 (1964) ("when it is shown why the witness was not called upon to testify and the reasons for not calling him are reasonable and proper, no inference that his testimony would be unfavorable is permitted"); *cf. United States v. Busic,* 587 F.2d 577, 586 (3d Cir.1978) (listing numerous reasons other than known unfavorable testimony for not calling a witness). In the words of

*Thomas,* when it was learned that Eates could not remember the evening in question, appellant had no particularly "stronger" reasons for producing the witness than the government had.[13]

In all, this case is much like *Dent v. United States, supra.* There, appellant testified as to a telephone call he had made the evening of the crime in the presence of members of his family. These family members had testified before the grand jury that they did not remember the evening in question. Nonetheless, the prosecutor asked the jury to draw an adverse inference from their failure to take the stand at trial. We reversed. In doing so, we determined that, in such circumstances, even though a familiar relationship existed, the family members were not "peculiarly available" to the defendant.[14]

■ We conclude that on the record presented here, it was error to allow the missing witness inference to be argued before the jury and to give the missing witness instruction.

### III

■ We now turn to the question whether the error in the missing witness argument was harmless; that is, whether we can "say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946); *Lawson v. United States, supra.* [15]

---

11. In cross-examination of Anthony, it came out that Eates and Anthony were about the same age and had grown up and gone to school together. Anthony said "yes" in response to the prosecutor's question whether they were "running buddies."

12. No issue was made of the accuracy or completeness of this assertion or its legitimacy as grounds for not calling Eates. The government did not ask for further inquiry by the court; it simply asserted that Eates's story might be affected on cross-examination. Nor did it request a continuance in order to try to locate and subpoena the witness.

13. It might also be said, invoking the other prong of the test, that as proffered, the testimony of Eates that he could not remember the specific night in question would not have "elucidated the transaction at issue."

14. Our holding also rested on the fact that in any event, the family members would be testifying as to the defendant's whereabouts not at the time of the crime but instead two hours later.

15. The government urges us to apply a plain error standard of review. Citing Super.Ct. Crim.R. 30 and *Villaroman v. United States,* 87 U.S.App.D.C. 240, 184 F.2d 261 (1950), it contends that appellants failed to renew their objec-

We deal first with Anthony. The evidence against him consisted of Thomas' eyewitness identification and Anthony's later possession of a pistol which resembled the one used in the robbery. Thomas' story was not without inconsistencies. This evidence was countered by appellant's alibi defense. In *Haynes v. United States*, 318 A.2d 901, 903 (D.C.1974), we held that where the credibility of the defendant was "all important to his defense," we could not say an erroneous missing witness argument and instruction were harmless. The crucial issue here was the identity of the persons who robbed Mr. Thomas, and the evidence as to Anthony boiled down to Thomas' eyewitness identification against Anthony's assertion that he was elsewhere. The prosecutor parlayed the inference into a biting attack on the credibility of both appellants' alibi witnesses. "In this situation, we cannot say that comment on the missing witness, which may have damaged appellant's credibility with the jury, was harmless error." *Coombs v. United States, supra,* 399 A.2d at 1318.[16]

For Donald, as well, we conclude that the missing witness inference, as argued by the prosecutor, may have left the jury substantially swayed by the error, and constituted a "substantial prejudice" against his defense. *Lawson v. United States, supra,* 514 A.2d at 792–93. While the evidence against Donald included a palm print found in the hallway near the scene of the crime and the discovery of property belonging to Thomas in the area in which Donald lived,[17] the prosecutor's missing witness argument urged the jury to consider adversely to both appellants Eates' failure to testify and undermined the credibility of Donald's alibi witnesses. The trial judge declined to give an instruction clearly separating Donald from the adverse witness. Furthermore, a successful showing that Anthony's alibi was solid, turning on the believability of the other family members, would have enhanced Donald's alibi and cast doubt on Thomas' identifications. Despite the fact

tion following the giving of the missing witness instruction, and thus did not preserve it for appeal. Further, the government points out that only Donald took issue with the prosecutor's use of the missing witness argument in his closing rebuttal. Hence, it argues, with the exception of the missing witness argument as applied to Donald, we may reverse only upon a showing of plain error.

We disagree. Focusing on the prosecutor's use of the inference, we have said that:

> The risks inherent in [the] missing witness argument also justify *procedural* safeguards designed to ensure that the foundational issues [elucidation and availability] are addressed *before* possibly improper inferences are suggested to the jury. The onus is not on the party against whom an inference is made to object after the fact. Rather, it is the responsibility of the party proposing the inference to seek and obtain advance permission from the court.

*Thomas v. United States, supra,* 447 A.2d at 58 (emphasis in original); *see also Arnold v. United States,* 511 A.2d 399, 415 (D.C.1986) (failure to seek permission from the court before making even an incomplete missing witness argument is error).

Nowhere in the record do we find any indication that the prosecutor sought and received permission to engage in his missing witness argument. He may well have concluded that the trial court's decision to give the missing witness instruction, made after a bench conference and objected to by Anthony's counsel, was in practical effect permission to make use of the inference in argument as well. But if that is the case, then the objection to the giving of the instruction applied to the prosecutor's use as well. Furthermore, after the prosecutor unexpectedly used the missing witness argument against both defendants, Donald's counsel sought an instruction limiting the inference to Anthony, which was refused. In these circumstances, we cannot hold the failure to object against the appellants, any more than we can fault the prosecutor for not obtaining specific permission to use the inference in argument. Hence, we need not deal with the *Villaroman* issue.

16. This case is distinguishable from *Cooper v. United States,* 415 A.2d 528, 535 (D.C.1980). In *Cooper,* we found a missing witness instruction to be harmless error in a case where, as here, an alibi was at issue. In *Cooper,* however, the alibi had already been "totally undermined" because the testimony of one of the key alibi witnesses had been discredited.

17. The property consisted of an insurance identification card that Thomas kept in his stolen wallet and a watch. The identification card, according to the government testimony, was found in a drawer of a table located in the basement area where Donald slept. The defense presented testimony that no table in the basement had a drawer and that the watch had earlier been given to the senior Carr as a present.

that the witness in question, Eates, was not a direct alibi witness for Donald, the improper missing witness argument and instruction as used in this trial could have undermined Donald's entire defense case in the jury's mind.[18]

Accordingly, we must reverse both convictions and remand the case for a new trial.[19]

*Reversed and remanded.*

---

**18.** The government attempts to distinguish this case from previous cases, such as *Haynes* and *Coombs,* which hold that such error involving a missing witness inference which affects a party's credibility mandates reversal. They do so on the grounds that in this case, unlike the above-cited cases, there exists corroborating evidence which renders the error harmless. We cannot read those cases in such a limited way. In *Thomas v. United States, supra,* 447 A.2d at 59 (citations omitted), we noted:

> Since prejudicial effect will depend largely on facts not before the court, *i.e.,* what the content of the missing testimony would have been, it is difficult for an appellate court to find the error harmless with the requisite level of certainty. Accordingly, where the defendant's credibility is a key issue and the missing witness inference goes to that credibility, an improper argument or instruction will ordinarily require reversal.

In this case, however, we have a defense proffer as to what the missing testimony would have

been. Thus, rather than total uncertainty as to what the testimony would have been, here it is extremely likely that the inference was more damaging than the testimony itself would have been. Furthermore, no item of corroborating evidence was so strong as to be plainly dispositive.

**19.** Appellants also contend that the trial court erred by allowing the prior recorded testimony of an expert witness on the subject of the extent of the injuries to the complaining witness, as pertaining to the mayhem charge. Accordingly, they maintain, the testimony should be excluded, and their mayhem convictions reversed for insufficient evidence.

We disagree. Even were we to disregard the expert testimony, the record shows ample evidence to support the charge of mayhem; not only did the complainant testify to his permanent double vision as a result of the attack, but his medical records were introduced as well. *See Perkins v. United States,* 446 A.2d 19 (D.C. 1982).