Keri J. **STRONG**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 94–CF–672.

District of Columbia Court of Appeals.

Argued May 24, 1995.

Decided Sept. 14, 1995.

---

Lesley Zork, Public Defender Service, with whom James Klein and David Reiser, Public Defender Service, were on the brief, for appellant.

Nancy B. Bukas, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Assistant United States Attorney, were on the brief, for appellee.

Before FERREN and KING, Associate Judges, and GALLAGHER, Senior Judge.

Dissenting opinion by Associate Judge FERREN at p. 199.

GALLAGHER, Senior Judge:

This case involves a "missing witness" whose identity was revealed to the jury by the complainant and who was an eyewitness to the alleged criminal activity, but whom the prosecution never called at trial. The trial court denied appellant's request for a missing witness instruction. We hold that the trial court did not err in its ruling on the instruction as the missing witness was not peculiarly available to the government.

## I.

Appellant was indicted for assault with a dangerous weapon (knife, stone, brick, and shod foot) in violation of D.C.Code § 22–502 (1989 Repl.), and malicious destruction of property (door, door frame, and lock property) in violation of D.C.Code § 22–403 (1995 Supp.). On March 24, 1994, the jury found appellant guilty of assault with a dangerous weapon (shod foot) and malicious destruction of property. Appellant contends that the trial court erred in denying appellant's request for a missing witness instruction.

The government's evidence at trial primarily consisted of testimony by the complainant. She testified that on June 23, 1993, she went to the alley behind her house to buy some crack cocaine. She met a person named Wesley who lived around the corner from her and whom she described as a "friend." Wesley directed the complainant to the end of the alley, where appellant was standing, to buy the drugs. The complainant recognized appellant from an incident a few months before when she had allowed him to use her phone, and when he refused to leave the house, her husband threatened appellant with a shotgun to get him to leave the house. That same day appellant returned to complainant's home and she would not let him enter.

Wesley approached appellant and told him that the complainant wanted to buy some drugs. Appellant mentioned the earlier incident where complainant's husband threatened to kill him with the shotgun. Complainant decided not to buy drugs from appellant. According to the complainant, she turned to walk away and appellant pulled out a knife and came toward her. As she backed away, she fell down and threw a ten dollar bill at appellant, hoping he would take the money and leave her alone. Appellant stopped to pick up the money, but then continued to approach her.

The complainant was trying to return home, but appellant caught up to her punching her in the face and head, knocking her to the ground. He then kicked her repeatedly and hit her with large rocks or bricks. Appellant finally demanded that she stand up and remove her clothes. When she removed her blouse, appellant looked away for a moment and the complainant ran home. She ran into her house and bolted the locks on the door. Appellant chased her and began to kick the door. Appellant kicked the door off the frame, but she was able to keep him out until he finally left. The person named Wesley was standing nearby during the incident. According to the complainant, Wesley "saw the whole thing." She testified that Wesley lived in the neighborhood, that she saw him periodically, and had last seen him "the day before yesterday."

Appellant's counsel impeached the complainant's testimony in numerous ways affecting her credibility. Other witnesses testified to other aspects of the incident, but no one else witnessed the alleged assaults. One witness testified that appellant told him that he had just "smashed this bitch around the corner," because "she had this white man pull a gun on him and try to kill him." Appellant's counsel impeached the credibility of this witness with a prior conviction and pending charge. Appellant's case was limited to the presentation of impeachment evidence.

Appellant requested a missing witness instruction because the government did not produce Wesley at trial. In response, the trial court made the following inquiry:

Court: Now, 2.41. Oh, this is missing witness. The Court of Appeals certainly loves that one. What's the Government's position on it?

Government: The Government is opposed to giving 2.41 in this case.

Court: All right. What makes it peculiar [sic] within the power of the United States to produce?

Defense: Your Honor, we've never heard of this person until yesterday. We don't get a last name. The Government's complaining witness says that this is a friend of her's who lives around the corner from her who witnessed the whole thing and she saw him two days ago.

Court: Okay. I don't think that puts the peculiarity [sic] within the power of the United States to produce, however. But I will do this: I'm not going to give the instruction. The signals from the Court of Appeals are tantamount to saying as far as I'm concerned that missing witness instruction is a dead letter in the District of Columbia. And I don't know how else you can interpret those rulings. And I'm talking about the most recent ones on missing witness.

It's kind of like a few other areas of the law where we give lip service to a particular legal proposition, but then we tear it apart in so many ways that as far as I'm concerned we might just as well not have the legal proposition because there's no room for it.

But you also need my permission to make the argument and I will accord you that permission. So you can make—you can make the argument and I am giving you the permission that you need to make the argument.

Defense: Including the inference.

Court: Including the inference.

Defense: In other words, I'll make the argument that—

Court: I don't think I can give you the authority to use the inference. Let me think about that. Including the inference?

Defense: So the Court is saying I can just say he's not here.

**Court:** No, you can say more than that. You can talk about the proposition that she knows him. Things that got out on the record, that she just saw him a week ago, why isn't he here.

**Defense:** Well, can I say, "We submit to you that he's not here because he wouldn't support what she has to say?" Not telling them that they can draw an inference, just say that that's what we argue.

**Court:** I think that's—yes. The answer is yes. So you have the permission that you need under the Court of Appeals decision to make the argument and you can argue, Mr. Weinsheimer, against it with whatever you need to argue against it.

**Government:** Your Honor, can I also argue that that—based on the testimony that is somebody who was known by [appellant] as well?

**Court:** Yes.

**Government:** The danger I don't want to get into is—

**Court:** The answer is yes. That's why I'm finding that it's not peculiarly within the power of the Government to have produced this witness. Yes. The answer to that question is also yes. Okay. But I will not give 2.41.

In closing, appellant's counsel argued that Wesley "did not testify because he wouldn't have supported, corroborated, confirmed what [complainant] had to say." In its rebuttal, the government responded by arguing that Wesley was someone known to appellant "just like he was known to [complainant]."

## II.

■ More than a century ago the Supreme Court stated that "if a party has it peculiarly within his power to produce witnesses whose testimony would elucidate the transaction, the fact that he does not do it creates the presumption that the testimony, if produced, would be unfavorable." *Graves v. United States,* 150 U.S. 118, 121, 14 S.Ct. 40, 41, 37 L.Ed. 1021 (1893) (citations omitted). Before a court may allow a missing witness instruction or inference "the court must determine (1) that the witness in question is peculiarly available to the party

against whom the inference is sought, and (2) that the witness' testimony would have elucidated the transaction at issue." *Lawson v. United States,* 514 A.2d 787, 789 (D.C.1986). Both requirements must be met before counsel may argue or a court may instruct on a missing witness. *Harris v. United States,* 602 A.2d 154, 161 (D.C.1992) (en banc). Even when the two prerequisites of elucidation and peculiar availability are satisfied, the trial court has discretion to refuse the instruction. *Thomas v. United States,* 447 A.2d 52, 58 (D.C.1982).

■ Elucidation is met when the alleged testimony is relevant, material, noncumulative, and "an 'important part' of the case of the party against whom the inference is drawn." *Id.* at 57. Peculiar availability is met if "the party had the physical ability to locate and produce the witness, and there was such a relationship, in legal status or on the facts as claimed by the party as to make it natural to expect the party to have called the witness." *United States v. Young,* 150 U.S.App.D.C. 98, 107, 463 F.2d 934, 943 (1972).

As we noted in *Thomas:*

There are two aspects of peculiar availability, both of which must be satisfied. The first and most obvious is physical availability. If a witness cannot be brought to court, no factual conclusion can be drawn from the failure to produce him. In general, a witness is not physically available unless he can be located, and is within the subpoena power of the court. Thus if a party has made bona fide reasonable efforts to produce the witness without success, no adverse inference will be permitted.

But the ability to hail the witness into court is not enough. Practical availability is also required. The party's ability to produce the witness, or his reasons for doing so, must be stronger than those of the party seeking an inference in his favor. Otherwise, an inference might just as well be drawn *against* the party who favors a missing witness inference. A finding of peculiar availability may be justified where circumstances suggest a potential bias in

favor of one party, *e.g.,* where he is employed by the party.

*Thomas, supra,* 447 A.2d at 57–58 (citations omitted).

### III.

■ Application of these principles to the facts in this case reveals that the trial court did not err in refusing to give a missing witness instruction. Here, there was no dispute before the trial court that Wesley's testimony would have "elucidated the transaction."[1] He was a potential eyewitness to a crime whose anticipated testimony would be relevant, material, noncumulative, and might be an important part of the government's case. *See Hale v. United States,* 361 A.2d 212, 216 (D.C.1976) (stating that "[s]ince the witness was present at the alleged assault, her testimony clearly could have elucidated the transaction"). However, the peculiar availability requirement is not met on the facts in this case.

Appellant asserts that Wesley was physically available only to the government since his only knowledge of Wesley's observation occurred during the complainant's trial testimony.

> We have rejected any rule which holds that witnesses are rendered automatically physically unavailable whenever the opposing party learns of their existence for the first time at trial. "In many circumstances, a party may readily secure by subpoena the testimony of a witness who comes to that party's attention for the first time during trial." *Miles v. United States,* 483 A.2d 649, 658 n. 9 (D.C.1984).

*Carr v. United States,* 531 A.2d 1010, 1013 (D.C.1987). Wesley was within the court's subpoena power. No attempt was made by appellant to secure Wesley as a witness.

Appellant argues that he only learned of Wesley during trial and was given no last name or address. However, complainant's testimony revealed that Wesley lived on

Georgia Avenue around the corner from her home.[2] Appellant did not make a showing that the prosecutor would not provide further information to locate Wesley or that appellant had tried to identify, locate and subpoena Wesley and could not do so. Nonetheless, in *Brown v. United States,* 388 A.2d 451 (D.C.1978), we stated that

> While we agree with the trial court that the use of a subpoena would in many circumstances have been a viable means by which appellant could have acquired the testimony of the witness, nevertheless, the defense should not have been required to have used a subpoena to acquire the testimony of the witness in the case where it discovered the identity and location of the potential witness only during the course of the trial.

*Id.,* 388 A.2d at 459 (citations omitted); *cf. Thomas, supra,* 447 A.2d at 60 n. 4 (stating that "[o]nce the trial had begun, it was too late to expect appellant to locate and produce the missing witness") (citation omitted); *United States v. Stevenson,* 138 U.S.App. D.C. 10, 13, 424 F.2d 923, 926 (1970) (concluding same when government first learns of missing witness at trial). Therefore, assumedly Wesley was not physically available to the appellant.

As we stated in *Harris, supra,* 602 A.2d at 160, "[t]wo aspects of peculiar availability must be met," physical availability and practical availability. *See also Thomas, supra,* 447 A.2d at 57–58 (stating that both physical and practical availability must be met). Therefore, although physical availability is technically met we must now address practical availability.

■ Appellant asserts that Wesley was practically available only to the government. "Although the witness may be physically available to both sides, if a party has a special relationship with a witness, that witness becomes unavailable in a practical sense to the opposing party because his testimony is expected to be hostile." *Dent v. United*

---

1. The government argues that because Wesley was in and out of mental institutions it is questionable whether he could elucidate the transaction. We do not address this argument since it was not raised before the trial court.

2. As a matter of fact, complainant testified on direct that Wesley was present at the scene and had spoken to appellant there concerning a proposed drug sale to the complainant.

*States*, 404 A.2d 165, 170 (D.C.1979). Special relationships can include a girlfriend, *Hale, supra*, 361 A.2d at 216; a government informer, *Burgess v. United States*, 142 U.S.App.D.C. 198, 204, 440 F.2d 226, 232 (1970); an employer-employee, *Milton v. United States*, 71 App.D.C. 394, 397, 110 F.2d 556, 559 (1940); or a relative, *Cooper v. United States*, 415 A.2d 528, 532–34 (D.C. 1980). However, an occasionally employed paid government informer is not peculiarly available to the government. *Richards v. United States*, 107 U.S.App.D.C. 197, 200, 275 F.2d 655, 658, *cert. denied*, 363 U.S. 815, 80 S.Ct. 1253, 4 L.Ed.2d 1155 (1960).

In this case, appellant asserts that Wesley was a "friend" of the complainant making him practically available only to the prosecution. However, " 'friend' can have a wide range of meanings. Friends testify against other friends. That relationship alone cannot justify the missing witness instruction, at least without further exploration." *Carr, supra*, 531 A.2d at 1014. Here, the complainant's testimony cannot be read as disclosing Wesley as a close "friend," but rather the relationship is best described as acquaintances and members of the same neighborhood. Her testimony, if taken as true, also reveals that Wesley was an acquaintance of appellant. There is no special relationship in this situation, such as girlfriend, relative, or employee, that reveals a "potential bias in favor of one party." *Thomas, supra*, 447 A.2d at 58.[3] There is no close friendship suggesting "a potential bias in favor of one party." *Id.* Wesley was practically available to both parties and, therefore, the missing witness was not peculiarly available to the government.

The dissenting opinion expresses the view that the trial court did not exercise its discretion in ruling against the "defense counsel's missing witness proffer." In support of this view, the opinion points to the remark by the trial judge in a colloquy that the missing witness instruction is "a dead letter in the District of Columbia," presumably, one would surmise, because the parties raising this issue in this court have lost on this point in a long series of decisions here. *E.g., Ray v. United States*, 616 A.2d 333 (D.C.1992); *Miles, supra; Thomas, supra.*

While the trial judge was engaging in a bit of loose language in the colloquy, he then went on to apply requirements of this court's opinions to defense requests for a missing witness instruction, stating "You have the permission you need *under the Court of Appeals decision* to make that argument [to the jury]." (Emphasis added.) The trial judge then made a crucial finding that "it's not peculiarly within the power of the government to have produced this witness." This constituted another application of this court's decisions. *E.g., Harris, supra*, 602 A.2d at 162–63; *Lemon v. United States*, 564 A.2d 1368, 1375 (D.C.1989); *Miles, supra*, 483 A.2d at 658.

What actually happened, therefore, is that after the previously related colloquy, the trial judge proceeded to apply the decisions of this court he had bantered about. So, we see no real justification for a remand, as the dissenting opinion urges.

The trial court did not abuse its discretion when it concluded that Wesley was not peculiarly available to the government. Nonetheless, the trial court did rule appellant's counsel could make a missing witness argument to the jury. Based on our analysis, finding that the witness was not peculiarly available, the trial court erred in allowing this argument to the jury to take place. However, this error helped rather than harmed appellant. In any event, the trial court did not err in denying the missing witness instruction and therefore the conviction is affirmed.

*So ordered.*

FERREN, Associate Judge, dissenting:

I respectfully dissent. In the first place, as I read the colloquy between court and counsel quoted by the majority, the trial court did not exercise its discretion whether to give the missing witness instruction. The

---

3. The government asserts that Wesley is peculiarly unavailable because he could invoke the Fifth Amendment right against self-incrimination. Although, a valid Fifth Amendment claim would make the witness peculiarly unavailable, *Lawson v. United States, supra*, 514 A.2d at 791, the government did not make this argument to the trial court.

court simply denied it automatically as "a dead letter in the District of Columbia ... like a few other areas of the law where we give lip service ... but ... there's no room for it." *Ante* at 196. Consequently, the court limited its exercise of discretion to the question whether defense counsel would be permitted to argue a missing witness inference—without an accompanying instruction—to the jury.

Contrary to the trial court's perception, the missing witness instruction is not a "dead letter in the District of Columbia." *Ante* at 196. *See, e.g., Harris v. United States,* 602 A.2d 154, 161 (D.C.1992) (en banc); *Thomas v. United States,* 447 A.2d 52, 57–60 (D.C. 1982). Appellant was entitled to a proper exercise of trial court discretion and did not receive it. This case accordingly should be remanded for that purpose, because an appellate court cannot substitute its judgment for an exercise of trial court discretion— unless the trial court would have but one option as a matter of law. *See Wright v. United States,* 508 A.2d 915, 919–20 (D.C. 1986) (citations omitted); *see also In re J.D.C.,* 594 A.2d 70, 75 (D.C.1991) ("trial court abuses its discretion when it rests its conclusions on incorrect legal standards") (citations omitted). As elaborated below, on this record the court was not so limited.

It is important to be clear: in the exercise of sound discretion a trial court need not give a missing witness instruction even if the prerequisites for it are met; appellant was not entitled to the instruction as a matter of law. *See Thomas,* 447 A.2d at 58. The record here, however, does not as a matter of law preclude the instruction (as the majority would have it). That is where the majority jumped the track and why a remand is required.

It is clear from Judge GALLAGHER's opinion that the majority believes the instruction could not properly have been given whether the court carefully considered appellant's request or summarily rejected it. My burden here, therefore, is to show not only that the trial court failed to exercise the required discretion—which as indicated above is the case—but also that the record leaves room for an exercise of discretion in favor of such an instruction, the issue to which I now turn.

All parties agree that, for the court to justify a missing witness instruction, the absent witness must have been "peculiarly available to the party against whom the inference is sought" and in a position to "elucidate[ ] the transaction at issue." *Lawson v. United States,* 514 A.2d 787, 789 (D.C.1986). Peculiar availability, moreover, has two components: "physical availability" and "practical availability." *Thomas,* 447 A.2d at 57, 58. My colleagues acknowledge that Wesley's testimony would have elucidated the transaction, see *ante* at 197, and that Wesley was not physically available to the defense, see *ante* at 198. There is no dispute, moreover, that Wesley was physically available to the government. Thus, the only question is whether Wesley was "practically available" to the government. *See Thomas,* 447 A.2d at 58. If he was, a missing witness instruction could have been given; otherwise, not.[1]

The majority concludes as a matter of law that Wesley was not practically available to the government because he was "practically available to both parties." *Ante* at 199. Accordingly, says the majority, he was "not peculiarly available to the government." *Ante* at 199. This conclusion is premised on the following language from *Thomas:*

> The party's ability to produce the witness, or his [or her] reasons for doing so, must be stronger than those of the party seeking an inference in his [or her] favor.

---

1. In response to this dissent, Judge GALLAGHER argues that the court did, in fact, exercise discretion whether to give a missing witness instruction when the court eventually said: "That's why I'm finding that it's not peculiarly within the power of the government to have produced this witness." *Ante* at 197. The court, however, did not say whether it had premised this finding on "physical" or "practical" unavailability and thus may have clearly erred, since the majority agrees that Wesley was physically available to the government but not to the defense. Accordingly, this statement does not reflect an informed exercise of discretion. Furthermore, because the court was discussing defense counsel's proposed missing witness jury argument, not a jury instruction, this "peculiarly" available finding cannot assuredly be said to relate to a missing witness analysis responsive to appellant's request for an instruction.

*Id.* This means there will be practical availability only if the witness's relationship with the party against whom the inference would be drawn is "stronger" than with the other party, and, for that reason, the witness's testimony would be "expected to be hostile" to the party who seeks the instruction. *Dent v. United States,* 404 A.2d 165, 170 (D.C. 1979); *see Thomas,* 447 A.2d at 58.

The problem here is that the record does not support the majority's conclusion, as a matter of law, that Wesley was "practically available to both parties." *Ante* at 199. According to the majority's reading of the complainant's testimony, Wesley was an "acquaintance" (not a "close 'friend'") of complainant and appellant alike. *Ante* at 199. This reading of the record will not do. Complainant repeatedly—at least three times—referred to Wesley as her "friend." There is no basis for inferring she meant a "distant," rather than a "close," friend. Moreover, although friendship "alone cannot justify the missing witness instruction, at least without further explanation," *Carr v. United States,* 531 A.2d 1010, 1014 (D.C.1987), this is not to say that a particular friendship cannot be strong enough to serve as the basis for "practical availability," especially when the opposing party is not a friend of the witness. Friendship can be a powerful relationship. "[F]urther explanation," *id.,* could show that friendship indeed is enough to pass the "practical availability" test—particularly in a case, such as this, where there is no probative evidence that appellant and Wesley were friends.

The trial court, however, permitted no exploration of the relationship between the complainant and Wesley, on the one hand, and between appellant and Wesley, on the other. When defense counsel asked for the missing witness instruction, she told the judge:

> We've never heard of this person [Wesley] until yesterday [during trial]. We don't get a last name. The government's complaining witness says that this is a friend of hers who lives around the corner from her who witnessed the whole thing and she saw him two days ago.

The trial court then cut off further consideration of the instruction. Despite the complainant's own testimony that she and Wesley were friends, and despite the fact that the complainant, given Wesley's physical availability, had a better chance than appellant of learning in advance of trial what Wesley's testimony would be—but chose not to call him to the stand—the trial court replied:

> "Okay. I don't think [appellant's proffer] puts the peculiarity within the power of the United States to produce.... I'm not going to give the instruction."

I do not understand how the majority, in view of the court's abrupt termination of the discussion, can reach a conclusive analysis, since the defense never had an opportunity to complete its proffer and elicit a discretionary ruling. The majority infers too much from the record unsupported by trial court findings that reflect a proper judicial mindset—an attitude that takes the defense proffer seriously, recognizing that the requested instruction is alive and well.

In particular, the majority draws an impermissible inference about a relationship between appellant and Wesley. The government asked the judge whether it could counter appellant's missing witness argument by telling the jury that Wesley "was known by [appellant] as well." The judge answered yes and cut off defense counsel's response. The most that can be inferred from the record, however, by reference to Wesley's allegedly pointing out appellant to complainant in the alley as a drug dealer and approaching appellant on complainant's behalf, see *ante* at 195, is that Wesley knew appellant was a drug dealer. This testimony does *not* imply that Wesley knew appellant, let alone that Wesley and appellant were friends. The government's request and the court's reply were plainly wrong, absent additional evidence about appellant's and Wesley's relationship (if any). There is no record basis for concluding that Wesley was as practically available to appellant as to the government.

\* \* \*

In sum, the trial court did not exercise discretion, as required, in denying appellant's

request for a missing witness instruction, and there is no record basis for concluding that the court would have had to deny the instruction as a matter of law. Nor was the error harmless. All agree that Wesley could have elucidated the transaction since he witnessed the entire incident. In this credibility contest, a missing witness instruction from the court is more powerful than a missing witness argument by defense counsel—especially in a case such as this in which the jury, showing skepticism, acquitted appellant of the more serious assault charges (knife, stone, brick).

To reiterate: a trial judge will not necessarily abuse his or her discretion by denying a missing witness instruction even when the prerequisites for it are met, *see Thomas,* 447 A.2d at 58, since there often is a danger in creating evidence out of non-evidence. Thus, appellant's request for this standard instruction ultimately may not be honored on this record; I make no emphatic merits argument on appellant's behalf. My concern is that the trial court summarily rejected a nonfrivolous, and arguably meritorious, request that appellant was entitled to have considered seriously and thoughtfully. I do not believe appellant received his due from the trial court, and I do not believe this court on appeal should do work that in the first instance is a trial court, not appellate court, responsibility informed in part by demeanor evidence. *See Wright,* 508 A.2d at 919–20.

I therefore would remand the case for a proper exercise of discretion further exploring defense counsel's missing witness proffer. If the court were to rule, after exercising proper discretion, that the instruction should not have been given, the conviction should stand affirmed subject to appellant's right of appeal. If the court were to rule otherwise, an order should be entered awarding a new trial.